773 A.2d 516

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Setareh R. JASEB.

No. 18, Sept. Term 2000.

Court of Appeals of Maryland.

June 8, 2001.

466

Melvin Hirshman, Bar Counsel and Raymond A. Hein, Asst. Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Arthur G. Kahn, of Washington, DC, for respondent.

Argued before ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

BATTAGLIA, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against Setareh R. Jaseb (Respondent), alleging violations of the Maryland Rules of Professional Conduct. The Commission (Petitioner), acting through Bar Counsel, charged Respondent with violating Rules 3.3 (Candor Toward the Tribunal), 4.1 (Truthfulness in Statements to others), 5.3 (Responsibilities Regarding Non-lawyer Assistants), 8.4(c) and (d) (Misconduct), and 8.1(a) (Bar Admission and Disciplinary Matters). Pursuant to Maryland Rule 16–709 *et seq.*, we referred the charges to Judge Martha G. Kavanaugh of the Circuit Court for Montgomery County to conduct a hearing and make findings of fact and conclusions of law.

After conducting an evidentiary hearing, Judge Kavanaugh concluded that Respondent had violated Rule 5.3, but that Respondent had not violated Rules 3.3, 4.1, 8.4(c) and (d) and 8.1(a). In this Court, Petitioner took exception to Judge Kavanaugh's conclusion that Respondent did not violate Rule 8.4(d) of the Maryland Rules of Professional Conduct. Respondent took no exceptions to Judge Kavanaugh's findings of fact or conclusions of law, but, instead, filed a Motion to Dismiss the petition for disciplinary action.

I.

Following an evidentiary hearing held on October 16, 2000, Judge Kavanaugh filed a memorandum opinion detailing her findings of fact and conclusions of law. We set forth Judge Kavanaugh's memorandum opinion below:

"The issue before the Circuit Court for Montgomery County, Maryland, is whether or not Setareh R. Jaseb (hereinafter [R]espondent), a 35–year–old Maryland attorney, violated the following rules of [a] Maryland Lawyer's Rules of Professional Conduct:

*"Rule 3.3 CANDOR TOWARD THE TRIBUNAL*

(a) A lawyer shall not knowingly:

(1) Make a false statement of material fact or law to a tribunal.

*"Rule 4.1 TRUTHFULNESS IN STATEMENTS TO OTHERS*

(a) In the course of representing a client a lawyer shall not knowingly:

(1) Make a false statement of material fact or law to a third person.

*"Rule 5.3 RESPONSIBILITIES REGARDING NON-LAWYER ASSISTANTS*

With respect to a nonlawyer employed or retained by or associated with a lawyer:

\* \* \* \* \* \*

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.

*"Rule 8.4 MISCONDUCT*

It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and

(d) engage in conduct that is prejudicial to the administration of justice.

*"Rule 8.1: BAR ADMISSION AND DISCIPLINARY MATTERS*

... a lawyer in connection with ... a disciplinary matter, shall not:

(a) knowingly make a false statement of fact.

"On October 16, 2000, a hearing was held before this Court. Counsel for the Attorney Grievance Commission, Raymond A. Hein, Esquire, was present. Respondent, Setareh R. Jaseb, was present with her counsel, Arthur G. Kahn, Esquire. Cooper V. Coleman, Teresa Burke Wright,

Esquire, and Respondent testified. The Court received the following exhibits from the Petitioner:

1. March 13, 1998 letter from [R]espondent to [B]ar [C]ounsel, Mr. Hein;

2. March 23, 1998 letter from Mr. Hein to [R]espondent;

3. April 7, 1998 letter from [R]espondent to Mr. Hein;

4. May 12, 1999 Inquiry Panel testimony of [R]espondent;

5. Certified District Court [of Maryland, sitting in Montgomery County] docket entries in *Chinese Carpet Center, Inc./Anetcom International v. Massoud Kowkabi* (0602–0022009–96);

6. January 29, 1997 petition for bankruptcy filed for Joe Kowkabi by [R]espondent;

7. November 19, 1997 letter from Cooper V. Coleman to Joel Zuckerman, Esquire, of Shein and Shelton;

8. and 9. Recording and transcript of hearing before Judge Craven on January 28, 1998;

10. and 11. Recording and transcript of phone message left by [R]espondent on Ms. Burke Wright's answering machine on January 28, 1998.

"The Court received the following exhibits from the [R]espondent:

1. March 17, 1998 letter from Cooper V. Coleman to Mr. Hein;

2. February 9, 1998 letter from Cooper V. Coleman to Mr. Hein;

3. January 29, 1998 petition for bankruptcy filed for Joe Kowkabi by [R]espondent with December 10, 1997 affidavit.

### FACTS

"In August, 1997, Anetcom International was assigned a $20,000 judgment against Massoud Kowkabi. The Director of Anetcom International, Cooper V. Coleman, garnished the $3,800 monthly rental income of a condominium owned by Kowkabi. The first garnishment mistakenly named the tenant rather than the actual lessee, Bank of Japan. The

Bank's attorney, Teresa Burke Wright, placed the November rent in its trust account pending a District Court ruling. On October 31, 1997, [R]espondent on behalf of her *pro bono* client, Kowkabi, filed a motion to quash garnishment of the rent because the wrong tenant was named. On November 4, 1997, Mr. Coleman filed an opposition to Kowkabi's motion to quash garnishment. Mr. Coleman noted that the Bank of Japan was named in his second writ of garnishment filed on October 31, 1997. Mr. Coleman offered a compromise, which would allow Kowkabi to retain 50% of all future rental payments under the lease until the $24,224 judgment was paid in full.

"Around November 12th, [R]espondent and Mr. Coleman spoke by telephone. During that conversation, Mr. Coleman agreed to release the $3,800 November rent because the [R]espondent accepted his proposal about future rents. The [R]espondent denies reaching a final agreement with Mr. Coleman, however, because her client was out of the country. Mr. Coleman was concerned because the [R]espondent never sent a confirming fax. He wrote to her prior law firm outlining his understanding of the agreement.

"There was no further communication between [R]espondent and Coleman until January 28, 1998, at the District Court for Montgomery County in Silver Spring, where [R]espondent and Mr. Coleman were before the Honorable Thomas Craven for a motions hearing. Before the hearing, the [R]espondent told Coleman her client was in Chapter 7 bankruptcy and gave him # 95-15772 as the case number. The [R]espondent told Judge Craven '... Mr. Kowkabi is in bankruptcy proceedings and as such we ask that the motion to quash the garnishment be granted since he is in bankruptcy proceedings. And I have that case number. The bankruptcy case ...' Judge Craven interrupted and, at his request, the [R]espondent filed a suggestion of bankruptcy.

"After the hearing the [R]espondent insisted that the December and January rent escrow should be released because the proceedings were 'Stayed.' Mr. Coleman disagreed.

"Ms. Teresa Burke Wright testified that she returned [R]espondent's call after receiving the following voice mail message:

'Ms. Burke Wright, hi, this is Setareh Jaseb calling on behalf of the Kowkabis. This is the case regarding Anetcom International v. Kowkabi. I am sure you are familiar with that case. You have two months worth of, ah, rent payments in escrow. We were in court today and the District Court of Maryland, Judge Craven ordered, ah that the escrow account be handed over to the Kowkabis. So if you would please, ah, go ahead and send the amount of the escrow accounts to the address that you had before as soon as possible because we do need that money before, ah, the beginning of next month—before February first. Mr. Cooper Coleman said that he would call you as well so that we can get this done as soon as possible. Ah, if he does not call you please I would ask you to call him. I am sure you have his number. Ah, if you don't have his number. I, I'm afraid I don't have it in front of me but my phone number is 3–0–1–2–7–9–9–6–6–3—if you would like to contact me regarding any questions you may have. Otherwise, I would appreciate, ah, your immediate attention to this matter. Thank you, bye-bye.'

During the conversation, the [R]espondent specifically stated that the Court ordered the release of the funds. Ms. Wright subsequently called Mr. Coleman who told her that the court did not order the release of the funds. The actual court order stated that the case was 'stayed.'

"Mr. Coleman's suspicions about the [R]espondent became increasingly heightened. On January 29, 1998, he searched the Bankruptcy Court files and learned that the case number the [R]espondent gave him was a 1995 filing for Kowkabi's business. He notified the [R]espondent who on January 29, 1998, filed a Chapter 7 Petition for Kowkabi with his affidavit, dated December 11, 1997. The [R]espondent told Mr. Coleman that she had not filed the petition on December 11th, but that another attorney had done so.

"Based upon the preceding scenario, Mr. Coleman filed a Complaint with the Attorney Grievance Commission.

*Respondent's Testimony*

"The [R]espondent was born in Oklahoma in 1965. She graduated from Widener University School of Law in 1992 and was admitted to the Maryland Bar on June 23, 1994. Her first position as an attorney was in June, 1996, with the Rockville firm of Shein and Shelton. Her pay was $1,000 per month. She engaged in research, collection of the firm's past due accounts, answering the phones, filing, scheduling of hearings and typing. Her time was evenly divided between secretarial work and solicitation of her own clients for which she could retain 60% of the fees. Her total client base consisted of three uncontested divorces, two domestic violence matters, three bankruptcy petitions, drafting a consignment contract and a personal injury case. The [R]espondent received no supervision from the other lawyers at the firm. She relied on her own research at the Courthouse library.

"The [R]espondent handled minor legal matters for Kowkabi before she agreed to file his bankruptcy claim *pro bono*. Kowkabi gave her a money order payable to the Bankruptcy Clerk for $175.00. On December 10th, Kowkabi signed the Bankruptcy Petition in duplicate, i.e., two signature pages.

"The [R]espondent left the firm October 31, 1997, because of a host of family problems. She is currently a single mother.

"Before the January 28th hearing, [R]espondent did not examine Kowkabi's file. She saw a post-it note with her law clerk's handwriting, indicating the old Bankruptcy number and the filing date of December 11th. There was no date-stamped copy in the file.

"The [R]espondent's law clerk, Ali Pournader, worked only twice a week for three weeks. He organized her files and filed pleadings in court. Mr. Pournader left on a 'sour note' as he resented 'running around.'

"The [R]espondent testified that despite Judge Craven's ruling she, at the time, believed that he meant the funds should be released to her client. She 'thought she had won' even though Judge Craven said 'I will not quash anything.' On cross examination, the [R]espondent said she did not receive any notice from the Bankruptcy Court after December 11[th] even though she knew notice was due within 30 days. The lack of notice did not concern her and she never notified Mr. Coleman or Ms. Wright about the December bankruptcy petition.

"Bar counsel in his closing remarks acknowledged that it is for this Court to assess [R]espondent's credibility and to evaluate her handling of the cases as either negligent or as fraudulent. Respondent's counsel argued that his client's behavior was a result of her inexperience, lack of supervision, and family problems.

"This Court is suspicious of the [R]espondent's course of dealing with Mr. Coleman. Respondent was wrong in her representations of fact and law to Judge Craven, Mr. Coleman and Ms. Wright. This Court is not convinced by clear and convincing evidence that the [R]espondent engaged in intentional deceit. Implicit in the court's reasoning in *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 443, 635 A.2d 1315, [1316 (1994)] is the notion that to be a violation of Rule 8.4, a misrepresentation must be intentional. In *Myers*, the court remanded 'the case to the hearing court for factual determination of whether the statements, which [it] found were false and misleading, were negligently uttered or constituted intentional misrepresentations.' *Id.* It appears that the [R]espondent here was negligent, which resulted in a 'tangled web.'

"Specifically, the [R]espondent acknowledged that she did not know in 1997 and 1998 the definitions of basic legal terms, i.e. 'stay'. She did not adequately supervise her law clerk in that she never discussed nor confirmed with him the December 11[th] bankruptcy filing. Respondent was negligent in not informing Mr. Coleman and Ms. Wright of the December 11[th] filing, and in not following up with the

Bankruptcy Court after 30 days had elapsed. The evidence that convinces this Court that [R]espondent's actions were not intentionally misleading is that she told Mr. Coleman on January 28th that the escrow funds should be released even though Mr. Coleman heard the clear ruling of Judge Craven which denied [R]espondent's motion to quash the garnishment. Moreover, [R]espondent told Mr. Coleman that she was planning to call Ms. Wright to release the escrow and she told Ms. Wright to verify her representations with Mr. Coleman. Such naïve behavior does not amount to fraud. It does, however, show her lack of competence.

"The Court finds by clear and convincing evidence that the [R]espondent violated the following rule:
1. Rule 5.3: Responsibilities regarding nonlawyer assistants.

"Since the evidence shows that the [R]espondent's conduct was negligent rather than intentional in dealing with Mr. Coleman, Judge Craven, Ms. Wright and Bar Counsel, this Court cannot find a violation of Rules 3.3, 4.1, 8.4(c) and (d), and 8.1.

This Court recommends that if the [R]espondent continues to practice law, she should attend C.L.E. classes and work under the supervision of an experienced member of the Bar."

## II.

### A. Petitioner's exception.

■■■■ We note that this Court has original and complete jurisdiction over attorney disciplinary proceedings. *See Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996). From our independent review of the record, we must determine whether the relevant findings of the hearing judge are based on clear and convincing evidence. The "hearing court's findings of fact are prima facie correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. White,* 354 Md. 346, 354, 731 A.2d 447, 452 (1999), (citing *Attorney Grievance*

*Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997)).

Petitioner excepts to Judge Kavanaugh's conclusion that Respondent did not violate Rule 8.4(d) in that Respondent did not engage in fraud or intentional deceit when she represented to Judge Craven that her client had filed for Chapter 7 Bankruptcy. Petitioner submits that the Respondent's conduct, even when viewed as negligent rather than intentionally fraudulent, constitutes conduct prejudicial to the administration of justice.

■ Rule 8.4(d) is violated when "the conduct which forms the basis of the Attorney Grievance Commission's charge was prejudicial to the administration of justice." *Attorney Grievance Comm'n v. Clark,* 363 Md. 169, 183, 767 A.2d 865, 873 (2001). The conduct which Petitioner regards as a violation of Rule 8.4(d) was Respondent's representation in the District Court that a bankruptcy case had been filed when, at the time of the representation, it had not been filed in fact. For a finding that Respondent's misrepresentation was "prejudicial to the administration of justice," the misrepresentation must have been intentional. *See Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 78, 753 A.2d 17, 29 (2000) (citing *Attorney Grievance Comm'n v. Clements,* 319 Md. 289, 298, 572 A.2d 174, 179 (1990)) (finding it necessary "to establish that the dishonesty, fraud, deceit or misrepresentation is intentional" to prove a violation); *see e.g., Attorney Grievance Comm'n v. White,* 354 Md. 346, 363, 731 A.2d 447, 457 (1999) (stating that perjury committed by an attorney admitted to practice in this state constitutes conduct prejudicial to the administration of justice and violates Rule 8.4(d)).

In *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 443, 635 A.2d 1315, 1316 (1994), an attorney was found to have violated Rules 3.3(a)(1) and 8.4(c) of the Rules of Professional Conduct when he misrepresented his driving record in response to a question posed by a District Court judge. A hearing was held at which the Respondent testified that he did not deliberately intend to deceive the trial judge when he

misrepresented his driving record. The hearing court, however, found the Respondent's testimony to be different from his prior testimony and concluded that "based on clear and convincing evidence, [Respondent] did deliberately misrepresent his record" to the District Court judge.

While in the case at hand the Respondent did misrepresent both fact and law to Judge Craven, Mr. Coleman and Ms. Wright, Judge Kavanaugh did not find by clear and convincing evidence that Respondent engaged in intentional deceit. Respondent indicates in her Motion to Dismiss that her testimony in the District Court was based on her mistaken belief that the Chapter 7 bankruptcy petition, which she had prepared and given to her law clerk for filing in December 1997, had been filed at the U.S. Bankruptcy Court. Respondent supports that belief by stating that the law clerk had made a notation in her office file that he had in fact filed for Respondent's clients, the Kowkabis. The evidence that seemingly convinced Judge Kavanaugh that Respondent's misrepresentations were not intentionally misleading was the fact that Respondent subsequently told Mr. Coleman on January 28th that the escrow funds should be released even though Mr. Coleman heard the clear ruling of Judge Craven when he denied Respondent's Motion to Quash the Garnishment. Furthermore, Respondent told Mr. Coleman that she was planning to call Ms. Wright to release the escrow and she told Ms. Wright to verify her representations with Mr. Coleman. Judge Kavanaugh considered these later statements and found them to be inconsistent with the conduct of one who intended to mislead. Judge Kavanaugh concluded that it is inconceivable that Respondent would have alerted opposing counsel of her plans to have the escrow funds released when these same counsel had full knowledge and cognizance of the court's ruling denying her Motion to Quash. We conclude that the hearing judge's findings are not clearly erroneous.

This case is distinguishable from *Attorney Grievance Comm'n v. Ficker,* 319 Md. 305, 572 A.2d 501 (1990), a case upon which Petitioner relies. In that case, this Court held

that a single failure to appear in court violates both the rule prohibiting lawyers from neglecting legal matters entrusted to them *and* the rule prohibiting lawyers from engaging in conduct prejudicial to the administration of justice. The circumstances in *Ficker*, however, are quite different from those under review here and included a pattern of negligence and "habitual" violation(s) of Disciplinary Rule 1–102, the predecessor to Rule 8.4(d). Patterns of negligence and habitual misconduct are not present in the instant case. In *Ficker*, the record reflected that the attorney knew precisely when court appearances were scheduled, but negligently failed to be present. Such a level of knowledge cannot be shown here. The facts credited by Judge Kavanaugh support her conclusion that Respondent was mistaken in her belief that a bankruptcy petition had been filed on behalf of her client at the time she represented a petition had been filed, but such mistake and the subsequent misrepresentation to the court and to opposing counsel were not made with knowledge of the falsity of the statement.

The evidence supports Judge Kavanaugh's finding that Respondent did not deliberately misrepresent both fact and law to Judge Craven, Mr. Coleman and Ms. Wright, nor did she engage in a pattern of negligence.

### B. Respondent's Motion to Dismiss

We now turn to Respondent's Motion to Dismiss. Respondent argues that "[i]t is reasonable to infer the Inquiry Panel would not have 'directed that Bar Counsel file charges against the Respondent as set forth in this petition,' . . . if it had found only a violation of Rule 5.3." Respondent continues that because the petition should never have been filed, Respondent should not be sanctioned in any form.

As Petitioner states in his response to the Motion to Dismiss: "[t]his speculative theory ignores the fundamental principle that formal charges of misconduct do not exist against an attorney until a complaint is docketed in this Court. . . . Once formal charges have been instituted . . . it is immaterial to speculate about whether an Inquiry Panel or the Review

Board may have acted differently had those bodies known how this Court's designated hearing judge was going to assess the Respondent's credibility."

 Judge Kavanaugh's finding that Respondent violated Rule 5.3 is supported by the record and our prior cases. Respondent did not supervise adequately her law clerk in that she never discussed nor confirmed with him the assumed December 11ᵗʰ bankruptcy filing and thereby violated the Maryland Rules of Professional Conduct Rule 5.3(b). The issue of the lack of supervision of Respondent's law clerk is heightened by the fact that the law clerk was a new employee who worked only twice a week and terminated his employment with Respondent after a mere three weeks. In *Glenn*, we stated that "Maryland Rule 5.3(b) requires an attorney to make reasonable efforts to ensure that employees' conduct is compatible with the lawyer's professional obligations." 341 Md. at 479, 671 A.2d at 478. This Court went on to state that "an attorney may not escape responsibility to his clients by blithely saying that any shortcomings are solely the fault of his employee. An attorney must ascertain that his or her employees perform their responsibilities in a competent manner." *Id.* at 479, 671 A.2d at 479 (quoting *Attorney Grievance Comm'n v. Goldberg*, 292 Md. 650, 655, 441 A.2d 338, 341 (1982)). *See also, Attorney Grievance Comm'n v. Dacy*, 313 Md. 1, 5, 542 A.2d 841, 843 (1988) (stating that "had the [R]espondent exercised a reasonable degree of supervision over [employee], he might have detected her error before any ethical proscriptions had been violated.")

 We turn now to Respondent's proposition that she should be exonerated of all charges because she was found to have violated only one Rule. The number of charges is not dispositive. The basis of the charge to which the attorney must defend is the factual allegation underlying the charges filed. *See Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 445, 635 A.2d 1315, 1317 (1994).

 The Rules do not require a minimum number of factual allegations and charges that must be filed and sustained. If a

"complaint that an attorney has committed *an* act of misconduct" is filed, the only requirement to file the complaint is that "the charges ... be sufficiently clear and specific reasonably to inform the attorney proceeded against of *any* misconduct charged...." *Attorney Grievance Comm'n v. Keister*, 327 Md. 56, 68–69, 607 A.2d 909, 915 (1992) (*emphasis added*) (quoting *Attorney Grievance Comm'n v. McBurney*, 282 Md. 116, 383 A.2d 58 (1978)). In short, this Court considers complaints alleging "an act of misconduct" and "any misconduct" without first considering the number of violations. Such terminology as "an" and "any" supports this Court's history considering a single violation or multiple violations as opposed to only considering complaints involving multiple violations.

 It should be noted, moreover, that the Petitioner is prudent to include all charges in the complaint that reflect the factual basis for which authorization by the Review Panel is given, because extraneous charges cannot be "added" at a later date. In *Attorney Grievance Comm'n v. McBurney*, 282 Md. 116, 383 A.2d 58 (1978) the Respondent successfully argued that only one of the violations charged was properly before the court because the other charges had not been before the Inquiry Panel, nor were they forwarded to the Review Board for its consideration. In the instant case, the Petitioner identified those Rules, which conceivably could have had application to the facts of the particular case, "because he becomes limited in the disciplinary action by such rules as he selects." *Id.* at 124, 383 A.2d at 63. That Respondent was only found to be in violation of one Rule does not mean that only one or none should have been charged initially, nor does it mean that the subsequent charge for which she was found in violation should be dismissed. Respondent's Motion to Dismiss is denied.

### III.

 We now turn to the issue of the appropriate sanction for Respondent's violation of Rule 5.3(b). The purpose of disciplinary proceedings is to protect the public rather

than to punish the erring attorney. *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 364, 624 A.2d 503, 513 (1993). This Court imposes sanctions to protect the public from harm, to uphold the integrity of the Maryland legal profession, and to deter other members of the profession from acting in a similar manner. *See Attorney Grievance Comm'n v. Webster,* 348 Md. 662, 678, 705 A.2d 1135, 1143 (1998). The facts and circumstances of each case will determine the appropriate sanction. *See Attorney Grievance Comm'n v. Tolar,* 357 Md. 569, 585, 745 A.2d 1045, 1053 (2000).

■■■■■ The fact that the Respondent was found to have violated only one of the five charges Petitioner brought against her is material in determining an appropriate sanction. As this Court stated in *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975) "[w]here an attorney has been shown to have been negligent, or inattentive to his client's interests ... in violation of the canons ... *the imposition of some disciplinary sanction* against him may be warranted; the extent of the discipline to be applied, however, is generally dependent upon the severity of the conduct and the particular facts and circumstances surrounding it." *Id.* at 362, 347 A.2d at 561 (emphasis added).

■■■■ In this case, Respondent argues that her client neither complained nor was prejudiced by the bankruptcy petition not being filed earlier than it was. Indeed, Respondent and the legal community are fortunate that the client was not prejudiced by Respondent's negligent conduct. That fact alone, however, does not define an appropriate sanction.

■■■■ Rather, some of the factors that this Court has considered in determining an appropriate sanction include:

"absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disci-

plinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses."

*Glenn,* 341 at 488–89, 671 A.2d at 483 (citations omitted).

 This case is similar to *Attorney Grievance Comm'n v. Stancil,* 296 Md. 325, 463 A.2d 789 (1983), where this Court took into consideration that no other complaints previously had been filed against the attorney and the client suffered no harm as a result of the attorney's violations. *Id.* at 332, 463 A.2d at 792; *see also, Attorney Grievance Comm'n v. Heinze,* 293 Md. 193, 442 A.2d 570 (1982) (where an attorney made a misrepresentation indicating that he had filed suit when in fact he had not, the court, in determining the appropriate sanction to be imposed, took into account the number of years the attorney had practiced law; that, at the time of his transgressions, the attorney had many personal problems; and, that the client was not harmed because the attorney had provided full compensation for any possible financial loss). In both cases, we ordered that a reprimand was the appropriate sanction.

Here, Respondent's inexperience, coupled with her lack of prior misconduct complaints, and the fact that the client was not prejudiced, must be weighed against her behavior, her inaccurate representations to Mr. Coleman, Mr. Wright and Judge Craven, and her negligent supervision of her recently hired law clerk. We conclude that the appropriate sanction is a reprimand.

***IT IS SO ORDERED: RESPONDENT SHALL RECEIVE A REPRIMAND; COSTS TO BE PAID BY RESPONDENT.***