920 A.2d 458

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Daniel Q. MAHONE.

Misc. Docket AG No. 7, Sept. Term, 2006.

Court of Appeals of Maryland.

April 10, 2007.

James P. Botluk, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Norman C. Usiak, Frederick, for respondent.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, Specially Assigned), JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), by Bar Counsel acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action in the Court of Appeals against Daniel Q. Mahone ("Respondent"). The petition charged that Respondent violated Rule 8.4(d) (misconduct)[2] of the Maryland Rules of Professional Conduct ("MRPC"), in his representation of clients, in three cases that were pending in the Circuit Court for Washington County. Pursuant to Maryland Rule 16–752(a),[3] we referred

---

1. Maryland Rule 16–751, in relevant part, provides:

 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of Commission. Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 8.4(d) provides:

 It is professional misconduct for a lawyer to:

 * * *

 (d) engage in conduct that is prejudicial to the administration of justice.

3. Rule 16–752(a) provides:

 (a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter

the matter to the Honorable Nelson W. Rupp, Jr., of the Circuit Court for Montgomery County, to conduct an evidentiary hearing and render findings of fact and recommend conclusions of law.

After a two-day hearing on the merits, Judge Rupp filed on December 20, 2006, the following findings of facts and conclusions of law:

## FINDINGS OF FACT

### (1)

Respondent represented Christopher Abbott in the case of *Jennifer Abbott v. Christopher Abbott*, case no. 21–C–04–20231–CT, in the Circuit Court for Washington County. This matter arose from a child custody dispute. A hearing was scheduled on August 26, 2005, 9:30 a.m. before the Honorable Donald E. Beachley. The evening before the hearing the parties reached a settlement regarding visitation. When the case was called at 9:38 a.m., Respondent was not present in court.

Mr. Abbott testified that he expected Respondent to be present to represent him. Mr. Abbott testified that he and Respondent had discussed the substance of the consent order the night before the hearing. Mrs. Abbott's attorney prepared the consent order. On the morning of the hearing, Mr. Abbott was left, without the benefit of counsel, to review the consent order with opposing counsel in the hallway of the courthouse. Mr. Abbott signed the consent order, which was filed in open Court, and the hearing concluded at 9:40 a.m. without Respondent appearing. Judge Beachley testified that he learned that Respondent arrived after the hearing's conclusion. However, there was no evidence that Respondent notified the Court upon his arrival or apologized for his tardiness.

---

a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

Mr. Abbott testified that he was pleased with the representation provided by Respondent. Mr. Abbott further testified that Respondent helped Mr. Abbott become a part of his son's life.

Respondent was discourteous to the Court by failing to timely appear for the Court hearing; by failing to notify the Court that he would be tardy; and by failing to either explain his tardiness or apologize once he arrived. Moreover, Respondent failed to be present to protect his client's interests at the Court hearing.

### (2)

Respondent represented Diana Sue Grimm in her divorce proceedings in the case of *Diana Sue Grimm v. Bodie Elwood Grimm,* case no. 21–C–04–18468 DA, in the Circuit Court for Washington County. Respondent filed a Petition for Contempt in that case on the grounds that Mr. Grimm allegedly violated the *pendente lite* order that awarded Ms. Grimm use and possession of the parties' marital home. On September 2, 2005, a contempt hearing in that matter was held before the Honorable Donald E. Beachley. Upon disagreement with the Court's findings, Respondent engaged in an extensive pattern of disruptive and disrespectful behavior, interrupting Judge Beachley on several occasions. During the initial stages of the hearing, Judge Beachley advised Respondent that it was impolite to interrupt the Court. At another point during the hearing, Respondent told Judge Beachley "if the Court made a mistake, the Court ought to be big enough to admit that." In addition, Judge Beachley had to ask Respondent to refrain from packing up his materials while he was rendering his opinion from the bench.

Subsequent to the Court's decision to dismiss the Petition for Contempt, there was a contentious exchange between Respondent and opposing counsel. Respondent interrupted opposing counsel when opposing counsel tried to address the issue of attorney's fees. Judge Beachley then accused Respondent of being discourteous, at which point Judge

Beachley and Respondent engaged in an argument in regards to Respondent's tardiness at the August 26, 2005 hearing. During this exchange, Respondent repeatedly accused Judge Beachley of demonstrating a lack of courtesy. When opposing counsel attempted to resume his argument, he walked towards Respondent's table and said to him: "If you stand up one more [sic], I will not stand for that-you cut me off."

Finally, Respondent once again told Judge Beachley that he ought to be big enough to recognize when he makes an error. Judge Beachley responded that such remarks were condescending, and Respondent accused Judge Beachley of having an "I can do no wrong" attitude.

Ms. Grimm testified during the attorney grievance proceedings that she was present during the September 2, 2005 hearing and was pleased with Respondent's representation of her interests. Ms. Grimm testified that Respondent was an effective advocate for her.

At the Respondent's request the Court listened to the recording of the September 2, 2005 hearing before Judge Beachley. It is Respondent's position that the recording of the September 2, 2005 hearing mitigates Respondent's conduct as it demonstrates a lack of courtesy and respect toward him by Judge Beachley. The Court concludes the opposite. Judge Beachley allowed Respondent to be fully heard. It is clear that Respondent repeatedly interrupted Judge Beachley and opposing counsel and pursued a pattern of disrespectful behavior to the bench. The Court finds no mitigation to support Respondent's conduct.

(3)

Respondent represented Diana Sue Grimm, the mother in a CINA proceeding, *In the Matter of George G., et al.,* case no. 21–I–04–50576–50583. A lengthy hearing was held on May 5, 2005 before the Honorable Judge Frederick C. Wright, III. At the end of the hearing, while Judge Wright was rendering his opinion, Respondent suddenly interrupted and accused Judge Wright of performing a disservice to Ms.

Grimm. At that time, Respondent informed Ms. Grimm that he was leaving the hearing, and he invited her to accompany him. Judge Wright asked Ms Grimm if she wished to walk out of the courtroom with Respondent. Respondent advised Ms. Grimm that she could stay but that he was going to leave. While Judge Wright was rendering his opinion from the bench, Respondent walked out of the courtroom and abandoned his client, Ms. Grimm. Elisha Elliott, Esquire was also present at this hearing. Ms. Elliott had been Ms. Grimm's CINA counsel. After Respondent left the hearing, Ms. Elliott came forward and Judge Wright appointed her to represent Ms. Grimm for the remainder of the hearing. Ms. Grimm testified that she did not feel that Respondent's behavior prejudiced her in any way.

Respondent's abandonment of his client in the course of Judge Wright's bench opinion was a violation of his duty to represent her interests. Respondent had an obligation to continue to represent M s. Grimm. Even though Ms. Elliott was able to adequately continue to represent Ms. Grimm's interests, there was no evidence to suggest that Respondent knew that Ms. Elliott would be able to continue with the representation of his client.

Respondent's blatant interruption of Judge Wright was an overt and public display of disdain for the Court and constituted disrespect for the administration of justice.

## CONCLUSIONS OF LAW

It is undisputed that Respondent failed to appear for the hearing held on August 26, 2005. While Respondent's absence appeared unintentional, he failed to notify the Court that he would be tardy; he failed to explain or apologize for his tardiness to the Court; and he failed to be present to protect his client's interests. On September 2, 2005, Respondent's behavior before Judge Beachley was disruptive and disrespectful to the Court. The Court had to address Respondent's offensive and disruptive conduct during the Court proceedings. On May 5, 2005, Respondent

interrupted Judge Wright and exited the courtroom in the course of Judge Wright's bench opinion, which disrupted court proceedings. Respondent abandoned his client when he left the May 5, 2005 proceedings. Respondent is a zealous advocate on behalf of his clients. However, his aggressive tactics cause him to lose his perspective. He has displayed a pattern of disrespect toward the Court. He has failed to recognize that he is an officer of the Court and has a duty to his clients, the Court and the public.

Respondent's conduct during each of the three proceedings does not appear to have resulted in any actual prejudice to his clients. Moreover, each of the court proceedings was concluded in spite of Respondent's disruptive behavior. However, when taken as a whole, Respondent's conduct in failing to appear in court, interrupting the judge and opposing counsel, and refusing to listen to the judge render his opinion undermines the judicial system and the public's faith in the system. It constitutes a lack of respect for the judicial process. For these reasons, Respondent's conduct is prejudicial to the administration of justice in violation of Rule 8.4(d) of the Maryland Rules of Professional Conduct.

Respondent filed written exceptions to the hearing judge's findings of fact and conclusions of law. First, Respondent contends that the hearing judge failed to make findings of mitigation on the basis of Respondent's "Equitable Grounds Defense," which suggests that the complaints filed against him in these proceedings were a product of judicial retaliation and resentment. In support of this position, he claims that when Judge Wright confronted him outside the courtroom in the hallway exclaiming, "his desire that Respondent not practice law in Washington County, Maryland[,]" that the judge's conduct, in that instance, confirms that "the motivation of the persons who filed the complaints in the instant case is guided by the desire to punish [him] rather than to vindicate the 'administration of justice.' "

Secondly, Respondent excepts on the grounds that his lateness for court on one instance hardly supports a finding, by clear and convincing evidence, that he intended any discour-

tesy to the Court. In addition, he "excepts to the finding that his absence at the hearing resulted in any disintegration of Mr. Abbott's rights." Thirdly, he excepts to the hearing judge's failure to find that (1) Judge Beachley initiated the pattern of interruption of counsel; (2) the court "goaded" Respondent during the hearing; (3) Judge Beachley was discourteous to counsel; and (4) Judge Beachley lost control of the proceedings and "created a hostile and oppressive court environment" because of his disdain and disrespect for Respondent. Finally, Respondent asserts that his conduct in walking out of the courtroom during Judge Wright's disposition of the case was a "speech protest" and not a "substantial disruption" of the court proceedings. Furthermore, he contends that Judge Wright could not have thought that Respondent's conduct was contemptuous because the judge did not hold him in direct contempt and "did not file a complaint about [that] incident until four (4) months later on September 15, 2005."

 Either party may file post-hearing written exceptions to the findings and conclusions of the hearing judge. Maryland Rule 16–758.[4] Specifically, Maryland Rule 16–759(b)(2)(B) provides:

> (B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. *Attorney Grievance*

---

**4.** Maryland Rule 16–758 provides, in pertinent part:

(b) Exceptions; recommendations. Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c). Only Respondent filed written exceptions.

*Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). As to the scope of our review, we take into consideration whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). This Rule provides that Bar counsel has the burden of proving the averments of the petition by clear and convincing evidence, and the attorney who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter of mitigation or extenuation by a preponderance of the evidence. *Guida,* 391 Md. at 50–51, 891 A.2d at 1095 (citing Rule 16–757(b)). "Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder." *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998). With regard to the hearing judge's conclusions of law, our review is *de novo. Attorney Grievance Comm'n v. Harrington,* 367 Md. 36, 49, 785 A.2d 1260, 1267–68 (2001).

 Respondent had a full opportunity to be heard as to his claim of mitigation. The hearing judge pointed out that he listened to the recording of the September 2, 2005 hearing before Judge Beachley and concluded, contrary to Respondent's assertions, that the record of that hearing demonstrated that Respondent "repeatedly interrupted Judge Beachley and opposing counsel and pursued a pattern of disrespectful behavior to the bench." In addition, the hearing court specifically found "no mitigation to support Respondent's conduct." This is consistent with the hearing court's other findings as to the case involving Judge Wright. According to the hearing judge, "Respondent's blatant interruption of Judge Wright was an overt and public display of disdain for the Court and constituted disrespect for the administration of justice."

The hearing judge made no findings as to whether Respondent proved by a preponderance of the evidence any mitigating factors. As to Respondent's theory of mitigation, based upon an "Equitable Grounds Defense," the allegation that the trial judge "goaded" Respondent or that the complaint filed against him was in retaliation are not sufficient mitigating factors. Assuming *arguendo* that Respondent was enticed by

Judge Beachley to react inappropriately or that the complaint filed against him was in retaliation for his aggressiveness or that Judge Wright was biased against him[5], those factors could not excuse Respondent's obligation, as an officer of the court, to respect the legal system. Notwithstanding Respondent's apparent opinion regarding the individual occupying the office of judge, Respondent owes a duty of respect to the office.

In the present case, it is implicit, however, in the court's finding of misconduct that the hearing judge did not find in Respondent's favor as to his "Equitable Grounds Defense." To be certain, we have never said that a hearing court must spell out every reason that supports its decision or explain why every other hypothesis is inconsistent with its conclusions. Moreover, even if the hearing court had determined that Judges Beachley and Wright were discourteous to Respondent or that the complaint against him constituted a retaliation, under no circumstances, could this Court justify Respondent's reactions as appropriate. It is elementary that Respondent's disruption of court proceedings and walking out of those proceedings did not constitute an appropriate response to what he has alleged constituted judicial misconduct. Thus, without any hesitation, we overrule Respondent's exceptions to the hearing judge's findings of fact.

---

**5.** From our review of the record filed in these proceedings it is undisputed that Elisha Elliott, Esquire, initially represented Mrs. Grimm, but recommended that Respondent represent Mrs. Grimm in the CINA case. Approximately halfway through the hearing, Judge Wright took a recess and entered the hallway wearing his robe. He approached Ms. Elliott shaking his finger and stating, referring to Respondent, "you know I don't want you bringing him up here." Respondent was present in the hallway when Judge Wright made this comment and Ms. Elliott confirmed for Respondent what the judge had said. Further, this confrontation followed an earlier motion filed by Respondent in the Abbott case that Judge Wright recuse himself from hearing the request for exceptions and the case on the merits. Judge Wright did not rule on the motion for recusal, in effect denying it, because, in his capacity as Administrative Judge, he had assigned the case to Judge Beachley.

■ Furthermore, we agree with the hearing judge's conclusions of law that Respondent violated MRPC 8.4(d). Not only did Respondent violate the rules of professional responsibility, his behavior which amounted to a pattern of disrupting the court proceedings and culminating in walking out while the trial judge rendered his oral opinion from the bench, constituted a direct contempt of court. As indicated by Respondent at oral argument, by walking out, he wanted the judge to know how he felt. *See* Md. Rule 15–202(b); *State v. Roll and Scholl,* 267 Md. 714, 733, 298 A.2d 867, 879–80 (1973) (noting that contempt of court involves conduct which is directed against the dignity and authority of the court, or a judge acting judicially, is an act which obstructs the administration of justice, and tends to bring the court into disrepute or disrespect); *Mitchell v. State,* 320 Md. 756, 764, 580 A.2d 196, 200 (1990); *Attorney Grievance Comm'n v. Alison,* 317 Md. 523, 536, 565 A.2d 660, 666 (1989) (noting that an attorney's failure to recognize that his misconduct which involved a pattern of inappropriate, rude, vulgar, insulting and sometimes criminal acts was prejudicial to the administration of justice and warranted a 90–day suspension from the practice of law). Under the circumstances of this case, both trial judges showed remarkable restraint in not finding Respondent in contempt. We do not interpret the exercise of restraint by either judge as an indication that Respondent's conduct was not a substantial disruption of the proceedings.

■ Having overruled Respondent's exceptions and concluding that Respondent violated MRPC 8.4(d), we next determine the proper sanction. Recently in *Attorney Grievance Comm'n v. Lee,* 393 Md. 546, 563, 903 A.2d 895, 905–06 (2006), we reaffirmed that

[t]he purpose of discipline under the MRPC is not to punish the lawyer, but to protect the public and the public's confidence in the legal profession. We protect the public through sanctions against offending attorneys in two ways: through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice

in this State. The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. The appropriate severity of the sanction depends upon the facts and circumstances of the case, taking account of any particular aggravating or mitigating factors.

(Citations and quotations omitted.)

As to the mitigation standards to which we ordinarily adhere, we have said:

The mitigating factors listed in the ABA Standards include: absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Lee,* 393 Md. at 564, 903 A.2d at 906 (citations omitted).

■ The appropriate sanction in this case is a reprimand. Petitioner recommends that we impose a suspension "to send a clear message to the Bar that deliberately disruptive conduct by attorneys in court cannot be tolerated." We can send that message, in the present case, without disrupting Respondent's practice of law. *See Attorney Grievance Comm'n v. O'Neill,* 285 Md. 52, 57, 400 A.2d 415, 418 (1979) (stating, under the circumstances of that case, that imposing a reprimand means it will forever appear in a reported Maryland case that the attorney sanctioned has been found to be a liar); *Attorney Grievance Comm'n v. Tolar,* 357 Md. 569, 585, 745 A.2d 1045, 1054 (2000) (holding that a public reprimand would "serve the purpose of protecting the public just as well as a short suspension"); *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 475, 773 A.2d 516, 522 (2001) (concluding that a reprimand was an appropriate sanction considering, among

other factors, the attorney's lack of prior misconduct and the lack of prejudice to the client); *Attorney Grievance Comm'n v. Lee,* 390 Md. 517, 527, 890 A.2d 273, 279 (2006) (holding that a reprimand will serve notice to the respondent and the Bar that "this Court considers an attorney's lack of diligence and lack of communication with his client, serious matters").

Even though we view counsel's conduct as constituting a direct contempt of court, we do not hold that every contempt of court committed by an attorney warrants the sanction of suspension from the practice of law or disbarment. The hearing judge noted that Respondent is a zealous advocate. The preamble to the Maryland Rules of Professional Conduct encourages attorneys to act zealously in advocating their client's causes. *See* Preamble: A lawyer's responsibilities. MRPC (noting that an attorney is required to provide zealous advocacy under the rules of the adversary system). As noted by the hearing judge in this case, Respondent's "aggressive tactics cause[d] him to lose his perspective." Furthermore, at oral argument before this Court, Respondent conceded that his conduct of walking out of the court while the judge was rendering his decision did nothing to enhance the administration of justice or rectify what he perceived to be judicial unfairness. Obviously, in the present case, Respondent, at the very least, again, could have noted an objection and stated his reasons on the record as to any point that he wished to preserve for appellate review.[6] Instead, he chose to insult the

---

6. For example, in the Abbott case, Respondent filed exceptions to the Master's Report and Recommendation. Before the case could be heard by a judge on the exceptions, Mrs. Abbott requested and obtained an emergency hearing. Over the objection of Respondent, the Circuit Court proceeded with the emergency hearing. In that proceeding, Judge Wright awarded physical custody of the minor child of the parties to the mother, pending the exceptions hearing, with seven hours a week visitation, on Saturdays, to the father. Respondent duly noted his objections to the proceeding and the judge's Order, and filed an appeal on behalf of Mr. Abbott. In an unreported opinion, *Abbott v. Abbott,* No. 02531, filed July 14, 2005, September Term 2004, the Court of Special Appeals reversed the judgment of the Circuit Court on the grounds that the evidence was insufficient to sustain the trial court's custody and visitation decision.

trial judge and in one instance show his disdain for the court by walking out during the judge's explanation of his reasons for his ruling. Such behavior cannot be tolerated by the court and clearly violates the attorney's duty to his client and the court.

Fortunately, in this case, Respondent's clients were not prejudiced as a result of his misconduct, and there is no record of any prior disciplinary proceedings filed against Respondent.

An observation that we made in *Alison*, 317 Md. at 536, 565 A.2d at 666, bears repeating here:

> Nearly 100 years ago, Justice Mitchell, on behalf of the Supreme Court of Pennsylvania, said: The bar have great liberty and high privileges in the assertion of their clients' rights as they view them, but, on the other hand, they have equal obligations as officers in the administration of justice; and no duty is more fundamental, more unremitting, or more imperative than that of respectful subordination to the court. The foundation of liberty under our system of government is respect for the law as officially pronounced. The counsel in any case may or may not be an abler or more learned lawyer than the judge, and it may tax his patience and his temper to submit to rulings which he regards as incorrect, but discipline and self-restraint are as necessary to the orderly administration of justice as they are to the effectiveness of an army.

(Citations omitted.)

As we have said, the appropriate sanction is a reprimand.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT; INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DANIEL Q. MAHONE.**