579 A.2d 781

Melvin C. CATTERTON

v.

Susan COALE, et al.

No. 914, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Sept. 26, 1990.

338

Joel L. Katz, (Harvey S. Wasserman, on the brief), Annapolis, for appellant.

Paul F. Newhouse (Jeri Lynn Balenson and Eccleston and Wolf, on the brief), Baltimore, for appellee, Susan Coale.

Kathleen A. Morse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee, Dept. of Social Services.

Argued before BISHOP, GARRITY and FISCHER, JJ.

FISCHER, Judge.

Melvin C. Catterton appeals from a decision by the Circuit Court for Anne Arundel County dismissing his complaint against appellees Anne Arundel County Department of Social Services and social worker Susan Coale. The trial court based its decision on the grounds of sovereign and statutory immunity. On appeal we address the following issues:

 I. Did the trial court err when it dismissed appellant's nonconstitutional claims against appellee, Susan Coale on the basis of statutory immunity?

II. Did the trial court err when it dismissed appellant's state constitutional claims against appellee, Susan Coale, on the basis of statutory immunity?

III. Did the trial court err when it dismissed appellant's state constitutional claims against appellee, Anne Arundel County Department of Social Services, on the basis of sovereign immunity?

Since the instant case was disposed of on motions to dismiss, we must assume the truth of all well-pleaded facts in the complaint, as well as inferences which may reasonably be drawn from those facts. *Wimmer v. Richards*, 75 Md.App. 102, 105, 540 A.2d 827 *cert. denied*, 313 Md. 506, 545 A.2d 1344 (1988).

This appeal arose as a result of a child sexual abuse investigation conducted by the Anne Arundel County Department of Social Services (AADSS). Assigned to perform the investigation was social worker Susan Coale.[1] The subject of the investigation was Melvin Catterton, a police officer for Anne Arundel County and father of the alleged victim.

In March 1985 appellant's estranged wife Jacqueline Catterton reported to AADSS that Melvin Catterton had sexually abused their two year old daughter. During the course of the investigation, Coale interviewed the appellant, his estranged wife, his teenage children from a previous marriage, and his minor son and daughter from his most recent marriage. Through the process of interviewing, Coale learned that the little girl was crying and screaming at night, that she seemed afraid of boys, and that she had engaged in sexual play with another female child. It was also related to Coale that the child, on two occasions, had returned home from visits with her father with noticeable redness in the vaginal area. Medical and psychological examinations were conducted which neither confirmed nor eliminated sexual abuse as the cause. It was further

---

1. Ms. Susan Coale has since left the employ of AADSS.

established that the appellant and his estranged wife were in the middle of a custody battle and harbored deep-seated hostilities toward one another.

Allegedly, Susan Coale received a report that appellant's attorney told the Maryland State Police that Catterton had taken a private polygraph examination. During the polygraph examination, Catterton supposedly admitted to ejaculating on his daughter. Consequently, after receiving this alleged report, Coale closed her investigation, concluding that the sexual abuse allegations lodged against appellant were confirmed.

Thereupon, criminal charges were initiated against Catterton for child abuse. Following the filing of criminal charges, the internal affairs division of the Anne Arundel County Police Department instituted departmental charges against Catterton. He was removed from patrol duties and was reassigned to an administrative position pending the outcome of the criminal case.

On August 29, 1986, all criminal charges were *nol prossed* by the State. Several months later the Anne Arundel County Police Department Internal Affairs Division cleared appellant of all departmental charges.

Thereafter, Catterton filed a civil suit in the Circuit Court for Anne Arundel County against AADSS and Susan Coale for negligence, malicious prosecution, negligent supervision and violation of Article 24 of the Maryland Declaration of Rights. Both appellees filed motions to dismiss. After conducting a hearing, the court ruled that Catterton's suit against AADSS was barred by sovereign immunity. A subsequent hearing was held after which the trial court dismissed appellant's complaint against Susan Coale on the basis of statutory immunity.

## I.

Appellant contends that the trial court erred in dismissing his negligence and malicious prosecution claims against appellee, Susan Coale, on the basis of statutory immunity

pursuant to Maryland Family Law Code Ann. § 5–708 (Repl.Vol. 1984, 1989 Cum.Supp.). The statute reads as follows:

> Any person *who in good faith* makes or participates in making a report of abuse or neglect under § 5–704 or § 5–705 of this subtitle or participates in an investigation or resulting judicial proceeding is immune from any civil liability or criminal penalty that would otherwise result from making or participating in a report of abuse or neglect or participating in an investigation or a resulting judicial proceeding. (Emphasis added.)

The key phrase in this statute is "good-faith." The statute does not define the term "good-faith," but in such a situation, under the rules of statutory construction, it should be given its plain and ordinary meaning. *Purnell v. Shriver*, 125 Md. 266, 270, 93 A. 518 (1915).

"Good-faith" is an intangible and abstract quality that encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage. *Black's Law Dictionary* 623 (5th ed. 1979). To further illuminate the definition of "good-faith," we found it most instructive to compare the definition of "bad-faith." "Bad-faith" is the opposite of good faith; it is not simply bad judgment or negligence, but it implies a dishonest purpose or some moral obliquity and a conscious doing of wrong. *Vickers v. Motte*, 109 Ga.App. 615, 137 S.E.2d 77, 80 (1964) (citing *Spiegel v. Beacon Participations*, 297 Mass. 398, 8 N.E.2d 895, 907 (1937)). Though an indefinite term, "bad-faith" differs from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with a furtive design. *New Amsterdam Cas Co. v. National, etc., Banking Co.*, 117 N.J.Eq. 264, 175 A. 609, 616 (Ch.1934), *aff'd*, 119 N.J.Eq. 540, 182 A. 824 (N.J.Err. & App.1936). Thus, we would infer that the definition of "good-faith" under § 5–708 means with an honest intention. *See Laws v. Thompson*, 78 Md.App. 665, 678, 554 A.2d 1264 (1989).

 Appellant complains that Coale was negligent in the manner in which she conducted the child abuse investigation against him. The fact that Coale may have been negligent in the performance of her duties as relating to the investigation of appellant does not mean that she did not act in "good-faith." Appellant, however, contends that Coale fabricated the report concerning his polygraph examination.[2] Certainly, this allegation implies that Coale acted with a dishonest purpose. As the question of bad faith remains in dispute, a motion to dismiss was not the appropriate context for resolution of this issue. *Laws*, 78 Md.App. at 677, 554 A.2d 1264. Perhaps additional discovery will reveal the source of the report and whether Coale acted in "good faith."

 Coale further avers that she is entitled to immunity pursuant to the Maryland Tort Claims Act, Md. State Gov't Code Ann. §§ 12–104, *et seq.* (1984). Section 12–105(a)[3] of the Act provides:

(a) In general—State personnel are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under this subtitle, even if damages exceed the limits of that waiver.

In order for Section 12–105(a) to apply, the employee's actions must be "without malice or gross negligence." *Foor v. Juvenile Services*, 78 Md.App. 151, 552 A.2d 947 *cert. denied* 316 Md. 364, 558 A.2d 1206 (1989). Again, the allegation of a fabrication by Coale is sufficient to show

---

**2.** ˙In numbered paragraph 13 of his First Amended Complaint and Demand for Jury Trial, appellant avers that Coale acted upon an alleged report, and in numbered paragraph 22, he states that she fabricated the report.

**3.** Section 12–105(a) was rewritten, effective October 1, 1990, and by virtue of a cross reference to newly enacted § 399.2(b) of the Courts Article, state personnel retain this grant of immunity.

malice or gross negligence. She is, therefore, not entitled to the immunity provided in the Maryland Tort Claims Act.

■ Appellant claims, too, that the trial court erred in dismissing his suit against Coale for malicious prosecution. The critical element to sustain this cause of action is malice. Appellant argues that the malice he complains of stems from the malicious conclusions made by Coale in her report which she then sent to the State's Attorney's Office and to the police. This, of course, presents the question of whether the conclusions in Coale's report were the product of an investigation muddied by Coale's own fabrications. Appellant's allegations to this effect were sufficient to overcome a motion to dismiss.

## II.

■ Appellant further contends that the trial court erred in dismissing, on the basis of statutory immunity, his state constitutional claims against Coale in her individual capacity. In the case *sub judice*, appellant alleged that Coale "deprived plaintiff of his liberty and property without due process of law in violation of the Declaration of Rights, Article 24." [4] As noted above, appellant also alleged that Coale fabricated certain portions of her report. Certainly, Coale was permitted to exercise her discretion while conducting the investigation. Despite her best judgment, however, Coale's conclusions may have ultimately proved incorrect. This alone does not constitute a violation of due process. But fabricating information is, of course, another matter. In alleging that the investigation was tainted by Coale's own fabrications, the complaint sufficiently states a colorable due process claim.

---

**4.** Article 24 of the Maryland Declaration of Rights provides:
That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

Coale responds by invoking statutory immunity under the Maryland Tort Claims Act and under § 5–708 of the Family Law Article. These provisions will not bring about the result Coale seeks, however. The Court of Appeals in *Clea v. City of Baltimore*, 312 Md. 662, 684, 541 A.2d 1303 (1988), stated "that an official who violates an individual's rights under the Maryland Constitution is not entitled to any immunity...." On this point, we think that *Clea* is dispositive. Certainly, as noted in *Clea*, 312 Md. at 685, 541 A.2d 1303, to afford immunity would largely render nugatory the recognized cause of action for the violation of constitutional rights. We, therefore, hold that the trial court erred when it dismissed the state constitutional claim against appellee in her individual capacity on the basis of statutory immunity.[5]

We make clear, however, that we do not imply that there was a fabrication. Our conclusions are solely in response to the allegations contained in the complaint.

### III.

Appellant also alleges, in his amended complaint, that AADSS violated Article 24 of the Maryland Declaration of Rights by negligently supervising the child abuse investigation against him and by negligently filing a report which resulted in the institution of criminal charges against him. Appellant contends that the trial court erred in dismissing his state constitutional claim against AADSS on the grounds of sovereign immunity.

"Under the doctrine of sovereign immunity, neither a contract nor a tort action may be maintained against the State unless specific legislative consent has been given and

---

5. Regardless, the allegations in the complaint remove it from the scope of § 5–708. Again we refer to the purported fabrication. As discussed above, if Coale fabricated elements of her investigation, she acted outside the good-faith immunity conferred in § 5–708. Similarly, fabrication would exceed the scope of Coale's public duties and would indicate malice or gross negligence inconsistent with § 12–105 of the State Gov't Article.

funds (or the means to raise them) are available to satisfy the judgment." *Department of Natural Resources v. Welsh*, 308 Md. 54, 58–59, 521 A.2d 313 (1986).[6] As the General Assembly must waive sovereign immunity, the courts have consistently refused to abrogate the doctrine. *Welsh*, 308 Md. at 59, 521 A.2d 313. While *Welsh* outlined the rudimentary principles inherent in sovereign immunity, further application of its discussion to the instant case is inappropriate. Appellant relies on *Welsh* to argue that his claim against AADSS is viable. *Welsh* is, however, inapposite. In *Welsh*, the Court of Appeals ruled that sovereign immunity did not bar a quiet title action based on an alleged taking by the Department of Natural Resources without just compensation. The Court expressly limited its holding to the facts of the case. *Welsh*, 308 Md. at 65, 521 A.2d 313. We, therefore, decline to expand *Welsh* beyond its original stricture.

In further support of his proposition, appellant also cites *Clea v. City of Baltimore*, 312 Md. 662, 541 A.2d 1303 (1988). With respect to this issue, appellant's reliance on *Clea* is misplaced. *Clea* involved an action against the Mayor and City Council of Baltimore, the Baltimore City Police Department, the Police Commissioner, and a police officer. The suit was based upon the officer's unlawful search of the Cleas' home. The Court noted that, as a matter of Maryland law, the Baltimore City Police Department is a state agency, and in turn, Baltimore City police officers are state, not city, employees. *Clea*, 312 Md. at 669, 541 A.2d 1303. Therefore, the City of Baltimore was not a proper party to the action, because the City was not the officer's employer. *Clea*, 312 Md. at 670, 541 A.2d 1303. The Court did not reach the issue of the Police Department's and the Commissioner's liability or non-liability, as state agencies, for the officer's conduct, since the

---

6. Limited to a discussion of nonconstitutional torts, our ruling in *Sawyer v. Humphries*, 82 Md.App. 72, 570 A.2d 341 (1990), *petition for cert. filed*, 1990 Term (No. 101), is inapplicable to the case *sub judice*.

Cleas failed to raise that question on appeal. *Clea*, 312 Md. at 671, 541 A.2d 1303. Consequently, *Clea* is not instructive on the viability of suit against AADSS which is a state agency. Absent compelling authority to the contrary, we decline to abrogate the doctrine of sovereign immunity to allow appellant's suit against AADSS.

Aside from the sovereign immunity issue, dismissal of appellant's complaint against AADSS was otherwise warranted for failure to state a claim. As we noted above, appellant claims that AADSS violated Article 24 of the Maryland Declaration of Rights through its negligent handling of the child abuse investigation and in failing to supervise Coale properly. Again we state that mere negligence does not rise to the level of a constitutional violation. Something more is required, and, in this regard, appellant's complaint with respect to the actions of AADSS is lacking.

JUDGMENT REVERSED IN PART, AFFIRMED IN PART; REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

ONE–THIRD OF COSTS TO BE PAID BY EACH OF THE PARTIES.