831 A.2d 453

**John S. BRICKER, Jr.**

v.

**Larry WARCH et al.**

**No. 2665, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

May 1, 2003.

Reconsideration Denied July 14, 2003.

120

Larru Polen, Towson, for appellant.

William H. Schladt, Gaithersburg, for appellees.

Argued before ADKINS, GREENE, CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

MOYLAN, J.

After his earlier five-count complaint was dismissed with leave to amend, the appellant, John S. Bricker, Jr., brought suit in an amended complaint against the appellees, Larry Warch and the Great American Insurance Company in the Circuit Court for Howard County. The amended complaint consisted of two counts, charging 1) malicious prosecution and 2) breach of contract. In the course of the amended complaint, Bricker attempted to add, as a third defendant, the Ohio Casualty Insurance Company. Judge Dennis M. Swee-

ney granted the appellees' motion to dismiss Ohio Casualty from the case. Judge Sweeney subsequently granted summary judgment in favor of the appellees on the charge of malicious prosecution.

Bricker sought to appeal that judgment in favor of the appellees and the circuit court certified it as a final appealable order. This Court, however, in an unreported opinion in the case of *Bricker v. Warch* (No. 1485, September Term, 2000, filed on May 11, 2001) dismissed the appeal as premature and remanded the case for the resolution of all remaining claims.

The breach of contract action was ultimately tried by Judge Sweeney, without a jury, on January 22, 2002. Judge Sweeney, at the end of the plaintiff's case, granted the Motion for Judgment in favor of the appellee Great American Insurance Company on that claim. This appeal has timely followed. On appeal, Bricker raises essentially three issues:

1. Did Judge Sweeney properly dismiss Ohio Casualty from the case?

2. Was Judge Sweeney in error in granting summary judgment in favor of the appellees on the charge of malicious prosecution?

3. Was Judge Sweeney in error in granting judgment in favor of the appellee, Great American, on the count charging breach of contract?

### The Factual Background

This case, consisting of a series of episodes, has an intensive factual background. The earlier opinion of this Court, dismissing the first appeal as premature, thoroughly summed up the factual background and we will, with minor editorial comment, quote from that factual summary extensively. In her opinion for the Court in that case, Judge Adkins accepted that version of the evidence most favorable to Bricker, as the party opposing summary judgment. That is the version of the evidence that is also appropriate for our present review of the summary judgment entered against Bricker on the charge of malicious prosecution.

## A.  The Accident and the Filing of the Claim

The first phase of the case involved 1) an alleged accident suffered by Bricker on June 10, 1995; 2) Bricker's claim for damages resulting from that accident; and 3) the initial investigation of that claim by the appellee Larry Warch.  Judge Adkins described that early history of the case.

Bricker, an insurance claims adjuster, alleges that he injured his back and shoulder, and scraped his arm, on June 10, 1995.  While attending an antique car show sponsored by a Frederick County elementary school, he fell from a broken swing on the playground.  Bricker allegedly wrote to the school shortly after the incident, claiming that "the underneath of my right forearm was scraped raw and bleeding from the elbow to the mid-forearm" and that "[t]here was also a large bleeding gash on my right leg just below the knee and . . . a painful area just below my right hip which eventually turned into a lump and large bruise."

The school forwarded his claim to Great American, its insurer.  Great American assigned the claim to Warch, an employee in its Special Investigation Unit.

Bricker alleges that Great American neglected his claim.  By the time Warch contacted him, Bricker had hired an attorney and refused to speak directly with Warch.  Warch and Bricker were strangers to each other.

Warch proceeded to investigate the claim, without contacting Bricker's attorney.  Warch found it significant that Bricker had a long-term history of back and shoulder problems.  He also learned that on the day of the incident, Bricker allegedly told the school janitor that he was not hurt.  Others who attended the event also claimed that Bricker had not displayed or claimed any injury.  Warch also obtained videotape that showed Bricker receiving an award approximately four hours after the incident, allegedly with no sign of the claimed injuries.  Warch ordered surveillance, with videotaping, which allegedly showed Bricker operating lawn equipment and playing catch with his children.

## B. The Referral to the Insurance Fraud Division

Suspecting that the claim was fraudulent, Warch referred the matter to the Insurance Fraud Division, but it declined to file criminal charges. Our earlier summary of the facts continued:

Based on his investigation, Warch suspected Bricker had filed a fraudulent insurance claim. In April 1996, he met with the Insurance Fraud Division of the Maryland Insurance Administration, and provided them the videotapes, medical reports, and statements from witnesses. The Fraud Division accepted the referral, but eventually declined to prosecute Bricker, noting that the expenses that he sought did not relate to the forearm injury ruled out by the awards videotape. In a May 6, 1996 letter to Warch, the chief investigator of the division advised that

[t]his office had previously conducted a review of [this] case and your investigative findings have been entered into our state-wide database for reference.... Our investigation has determined that insufficient evidence is present at this time to support the filing of criminal charges. Since evidentiary demands are much greater in a criminal case, our screening and investigatory requirements are likewise demanding.... This decision does not impair your ability to continue any associated actions regarding this claim or to seek any civil remedies should you deem it necessary and proper.

## C. The Frederick County Criminal Prosecution

Warch then took his evidence of suspected fraud to the Frederick City Police Department and to the Frederick County State's Attorney's Office. A grand jury indicted Bricker for insurance fraud, but his subsequent trial resulted in the granting of his motion for a judgment of acquittal. Judge Adkins's summary continued:

Dissatisfied with this decision, Warch "felt further review was warranted." He allegedly contacted Bricker's past and current employers, co-workers, and friends, and even his

children's teachers. He told them Bricker was under investigation for insurance fraud. As a result of this additional investigation, Warch allegedly learned from Bricker's former co-worker in the Frederick City Police Department, who perceived Bricker as a person who "would do anything and cheat anyone to get what he wants," that Bricker had a long history of initiating lawsuits.[2] Warch allegedly reported Bricker to the National Insurance Crime Bureau ("NICB"), a data repository regularly visited by insurance companies.

---

[2] In his answers to interrogatories, Bricker provided information regarding 22 different lawsuits in which he was the plaintiff. Most were small claims, and were settled before trial.

---

On May 17, 1996, Warch presented his accumulated evidence to the State's Attorney in Frederick County. Bricker claims that the information supplied by Warch was the sole basis for the case against him. Warch appeared before a grand jury in June 1996. The grand jury indicted Bricker for insurance fraud. In response, Great American reduced its reserve, which had been set at 80% of the claim, to only $2,500. Bricker claims that Warch also contacted his employer with news of the indictment. This report and the report to the NICB allegedly cost Bricker his 17 year job as a claims manager for an insurance company, and prevented him from finding another job in the insurance industry. At trial, after the State rested its case, the Circuit Court for Frederick County granted Bricker's motion for acquittal. Thereafter, Warch allegedly made no effort to notify Bricker's employer or other persons he had contacted during his investigation, or to revise either Bricker's record at the NICB or Great American's reserve.

## D. The Howard County Suit by Bricker

Bricker then filed the present suit in Howard County. Our earlier opinion further explained.

Bricker filed a five count complaint against Warch and Great American. He asserted claims for malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation against both Great American and Warch, and for breach of contract against Great American only. Appellee's motion to dismiss the complaint was granted, with leave to amend the malicious prosecution, defamation, and breach of contract claims. Bricker filed an amended complaint reasserting those counts. Appellees again moved to dismiss. That motion was granted as to the defamation count, but denied as to the other two counts.

### E. Summary Judgment on the Charge of Malicious Prosecution

Prior to a scheduled trial on the merits, summary judgment was granted in favor of both appellees on the malicious prosecution count but was denied as to the breach of contract count against Great American. Judge Adkins summarized these procedural developments.

Trial was set for July 17, 2000. On June 23, 2000, the same date as the pre-trial conference, appellees moved for summary judgment on both remaining counts of the amended complaint....

... In a July 11, 2000 memorandum opinion and order, the circuit court granted summary judgment on one of the two counts. The court found that "summary judgment on the malicious prosecution case is required because of the provisions of Section 27–802 of the Insurance Article," which affords a qualified civil immunity to those who make a good faith report of suspected insurance fraud to either the Fraud Division or to "an appropriate ... state or local law enforcement authority...." Ins. § 27–802. The court denied summary judgment on the breach of contract count, in which Bricker claimed that he is a third party beneficiary of Great American's insurance contract with the school, as evidenced by Great American's partial payment of his medical expenses claim. It held that it could not conclude from

the record that Great American was entitled to judgment on that claim.

## F. The Trial on Remand As to Breach of Contract

Following the decision of this Court as to the prematurity of the earlier appeal, the case was set for trial on Bricker's claim against Great American for breach of contact. Bricker moved pretrial for summary judgment in his favor. That motion was denied on December 21, 2001. The non-jury trial was heard on the merits by Judge Sweeney on January 22, 2002. At the conclusion of the plaintiff's case, Judge Sweeney granted judgment in favor of Great American. His ruling was:

> [T]he Court has before it the Defendant's Motion for Judgment at the conclusion of the Plaintiff's case. The Court will grant that Motion and enter Judgment for the Defendant.
>
> The Court believes that the Plaintiff has failed to sustain in the presentation this morning, evidence that would prove the case against the Defendant on the issue of the damages sustained in the causal relationship of the event to those damages. And for those reasons, the Defendant's Motion for Judgment at the conclusion of the Plaintiff's case, is granted.

### Dismissal of Ohio Casualty As a Party

It is convenient to consider Bricker's claim with respect to Ohio Casualty first, simply to get it out of the way. Our earlier opinion recited the brief procedural history with respect to Bricker's effort to add Ohio Casualty as a defendant.

Discovery ensued. Bricker learned that Great American had transferred its commercial coverages division, and Warch's employment, to the Ohio Casualty Company ("Ohio Casualty"). On June 12, 2000, Bricker amended his complaint to add Ohio Casualty as a defendant.

... Ohio Casualty also moved separately to dismiss the claims against it....

At a July 7 hearing on both pending motions, the court granted Ohio Casualty's motion.

Judge Sweeney's decision not to allow Ohio Casualty to be added to the suit as a defendant was absolutely proper. The accident that gave rise to the disputed insurance claim in this case occurred on June 10, 1995. Bricker's civil suit against the appellees was filed on June 10, 1998. No fact of any pertinence to this case occurred after that date of filing.

It was only at some time after June 10, 1998, that Great American Insurance Company sold its commercial lines division to Ohio Casualty Insurance Company. As a result of that sale, the appellee Larry Warch has since become an employee of Ohio Casualty. Ohio Casualty, however, had no involvement with any of the events that are pertinent to this case.

Great American remains an active insurance company, operating out of Cincinnati, Ohio. It continues to be qualified to do business in Maryland. As counsel for Great American represented at the hearing of July 7, 2000:

> Great American Insurance Company is not asserting the defense that Ohio Casualty is responsible, and I'll say for the record that Great American is not asserting that defense, and, that being the case, then, I don't know how Ohio Casualty can come in. Great American agrees that if there is a judgment that has to do with the malicious prosecution or a judgment that has to do with the contract action, that Great American Insurance Company is responsible for it.

Judge Sweeney, at the conclusion of that hearing, granted the motion to dismiss the amended complaint "as it pertains to Ohio Casualty Insurance Company." We see no error.

### Summary Judgment as to Malicious Prosecution

After an extensive hearing on July 7, 2000, Judge Sweeney, on July 11, filed his Memorandum and Order, whereby he granted summary judgment in favor of both appellees on the charge of malicious prosecution. Before us, the appellees strenuously maintain that they were entitled to summary judgment for three separate and independent reasons: 1) their enjoyment of qualified immunity; 2) the absence of any

evidence of malice generally; and 3) the unquestioned evidence of their probable cause to proceed with the prosecution.

At this juncture, however, the appellees must content themselves with a more meager victory. Judge Sweeney, while ruling in their favor, based his ruling only on the ground of immunity. Our review, accordingly, will consider only that ground. In *Warner v. German,* 100 Md.App. 512, 517, 642 A.2d 239 (1994), Judge Harrell wrote for this Court:

> [W]hen analyzing the lower court's decision, we ordinarily are confined to the basis relied on by that court and may not otherwise explain its conclusion by introducing new legal theories. *See Cheney v. Bell Nat'l Life Ins. Co.* 315 Md. 761, 764, 556 A.2d 1135 (1989) ("[O]rdinarily we will not affirm the granting of summary judgment for a reason not relied upon by the trial judge."); *Geisz v. Greater Baltimore Medical Center,* 313 Md. 301, 314 n. 5, 545 A.2d 658 (1988) ("*[T]he appellate court will not ordinarily undertake to sustain the judgment by ruling on another ground, not ruled upon by the trial court, if the alternative ground is one as to which the trial court had a discretion to deny summary judgment.*").

(Emphasis supplied).

Judge Sweeney's immunity ruling was based on Maryland Code, Insurance Article, § 27–802(a)(1), which directs insurers and their employees "who in good faith have cause to believe that insurance fraud has been or is being committed" to report such suspected fraud to various governmental authorities:

> (a) *In general.*—(1) *An authorized insurer, its employees,* producers, as defined in § 20–101 of this article, or agents, *who in good faith have cause to believe that insurance fraud has been or is being committed shall report the suspected insurance fraud* in writing *to* the Commissioner, the Fraud Division, or the appropriate federal, *State, or local law enforcement authorities.*

(Emphasis supplied).

Subsection (c) then goes on to shield from civil liability those who have in good faith reported such "suspected insurance fraud":

(c) *Civil liability.—A person is not subject to civil liability* for a cause of action by virtue of reporting suspected insurance fraud *if:*

(1) *the report was made to* the Commissioner, Fraud Division, or an appropriate federal, *State, or local law enforcement authority;* and

(2) the person that reported the suspected insurance fraud acted in good faith when making the report.

(Emphasis supplied).

### A. There Is No "One Strike" Rule

■ Bricker seizes upon the fact that both in subsections 27–802(a)(1) and 27–802(c)(1), the agencies to which a report of suspected insurance fraud may be reported are listed in the disjunctive. From that predicate, he argues that the immunity from civil liability applies only to the first such report and does not shield any subsequent report to a different agency or body of government. Section 27–802(c) is, according to Bricker's vision of it, a stingy and grudging immunity from civil liability, austerely limited to "one bite out of the apple."

Judge Sweeney squarely rejected that pinched interpretation of the law:

There is no doubt that the malicious prosecution claim in the case directly arises out of conduct that would be immunized under § 27–802 if the criteria of the statute are met.

*Plaintiff distinguishes* this factual situation from the type immunized by the statute *by claiming that only a single reporting of fraud is permissible and that once Defendant Warch was rebuffed by the Insurance Commissioner, he could not seek to refer the matter to another law enforcement authority. The Court does not agree with this conclusion.* Subsection (a)'s *requirement* of reporting may be satisfied by a single report, but subsection (c)'s cloak of immunity surrounds any report that is made to a listed law enforcement entity.

(Emphasis supplied).

We agree with Judge Sweeney's ruling. Bricker's argument, on closer examination, really refutes itself. It is an

absolute "one report and one report only" proposition. Based as it is on the legislative use of the disjunctive "or," it does not even depend on the nature of the response to the first report. If the Fraud Division, for instance, had responded, "This is an extremely strong case and should immediately be reported to the State's Attorney's Office," Bricker's absolutist interpretation of § 27–802(c)(1) would not immunize a subsequent report to the State's Attorney's Office. If an insurance company, for example, through two employees reported a suspected fraud to two agencies of government simultaneously, Bricker's absolutist interpretation would shield only one of those reports, and presumably a coin might have to be flipped to determine which one. If a report to a federal law enforcement authority, for instance, produced the response that the alleged fraud, though very real, was within the exclusive jurisdiction of the state, Bricker's absolutist interpretation would not immunize taking the matter to the state authorities. We hold that the Legislature obviously did not write such a "one strike" or "one bite out of the apple" limitation into § 27–802.

## B.   The Good Faith Requirement

It is, however, still required by § 27–802, as a matter of course, that the report of suspected insurance fraud have been made "in good faith" in order for the person or other entity making the report to enjoy the immunity from civil liability. A report made in bad faith will not be shielded from suit.

Judge Sweeney's very thorough analysis concluded that the proffered evidence could not "show the lack of 'good faith' necessary to maintain the action."

Plaintiff's argument on the issue seems to be limited to his belief that immunity pertains only to the first report, see Plaintiff's Memorandum page 6, but it may be that Plaintiff also contests that Defendant can take advantage of the "good faith" provisions in making the report to the State's attorney.

After a review of the evidence, even viewing it in the light most favorable to the plaintiff, *the Court is not convinced that the evidence can show the lack of "good faith" necessary to maintain the action.* From the summary judgment record before the Court, *the facts disclose that there was no contact of any type between Mr. Bricker and Mr. Warch before the insurance claim began. Mr. Warch is not accused of having any motive to harm Mr. Bricker for any personal or other purpose unconnected to his job as an insurance investigator.*

At best, from Plaintiff's point of view, the record may show that Mr. Warch was overzealous and was not as careful or objective as he should have been in reporting all aspects of the claim investigation to the prosecutor. While Plaintiff criticizes Mr. Warch on his preparation and whether, in his zeal, he disclosed everything that may have exonerated Mr. Bricker, *there does not appear to be any basis to infer "bad faith" or that Mr. Warch was acting with anything other than "an honest intention"* even if it was wrongly directed *in reporting insurance fraud.* Cf., *Catterton v. Coale,* 84 Md.App. 337, 342, 579 A.2d 781 (1990). Given the purpose of the statute, which is to promote the reporting of suspected fraud to the authorities without fear of civil liability, something more must be shown than that Mr. Warch acted too quickly or too zealously in making a referral of fraud to the appropriate authorities.

For these reasons, *the Court concludes that Section 27–802 of the Insurance Article bars the claim for malicious prosecution.*

(Emphasis supplied).

The case of *Catterton v. Coale,* 84 Md.App. 337, 579 A.2d 781 (1990), to which Judge Sweeney made reference, is instructive on the subject of good faith.

The key phrase in this statute is "good-faith." The statute does not define the term "good-faith," but in such a situation, under the rules of statutory construction, it should be given its plain and ordinary meaning.

*"Good-faith"* is an intangible and abstract quality that *encompasses,* among other things, *an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage.* Black's Law Dictionary 623 (5th ed.1979). To further illuminate the definition of "good-faith," we found it most instructive to compare the definition of "bad-faith." *"Bad-faith"* is the opposite of good faith; it *is not simply bad judgment or negligence, but it implies a dishonest purpose or some moral obliquity and a conscious doing of wrong.* Though an indefinite term, "bad-faith" differs from the negative idea of negligence in that *it contemplates a state of mind affirmatively operating with a furtive design.* Thus, we would infer that the definition of "good faith" under § 5–708 means with an honest intention.

84 Md.App. at 342, 579 A.2d 781 (emphasis supplied).

We affirm Judge Sweeney's ruling. There was no evidence of any personal animus on the part of Larry Warch toward Bricker. He had never met him or heard anything about him. Warch was simply in the business of investigating the *bona fide* nature of insurance claims. He received Bricker's claim of an accident on school property which seemed to be squarely contradicted by 1) the personal observation of the school's custodian and 2) a videotape of an apparently uninjured Bricker several hours after the alleged accident. Subsequent surveillance of Bricker strengthened the suspicion that the claim of injury was false.

The declination of the Insurance Fraud Department to press charges did not constitute, as Bricker characterizes it, a definitive conclusion that there was no fraud. It determined that "insufficient evidence is present at this time" but further advised that "[t]his decision does not impair your ability to continue any associated actions regarding this claim."

After Warch presented his findings to the Frederick City Police Department and the Frederick County State's Attorney's Office, the Assistant State's Attorney investigating the case concluded that there was enough evidence of fraud to

present to the Grand Jury. The Grand Jury, in turn, concluded that fraud was present and returned an indictment. We agree with Judge Sweeney that, in the language of *Catterton v. Coale*, 84 Md.App. at 342, 579 A.2d 781, there was no evidence of "a dishonest purpose or some moral obliquity and a conscious doing of wrong." Summary judgment was properly granted in favor of both appellees on the count charging malicious prosecution.

### The Breach of Contract Claim

The basis for Bricker's breach of contract claim against Great American was that he was a third party beneficiary of an insurance policy between Great American and the Frederick County Board of Education, whereby Great American agreed to pay up to $10,000 for medical damages incurred by any one individual for an accident occurring on school property, without consideration of fault.

### A. Denial of Summary Judgment in Favor of Bricker

Prior to the trial on the merits of the breach of contract claim, Bricker moved for summary judgment in his favor. A hearing on his motion was held on December 19, 2001. The appellees argued that there was a genuine dispute of material fact as to 1) whether Bricker had even suffered an accident and 2) whether there was any causal connection between the alleged accident and his medical trauma. The protestations of the appellant to the contrary notwithstanding, a genuine way of disputing a causal connection between A and B is to prove the non-existence of A. The appellees' arguments were supported by deposition testimony. As Judge Sweeney pointed out, moreover, on the subject of causality even the proffered testimony of Bricker's medical experts was problematical and subject to differing interpretations:

> The question of causality, I think, has this twist to it. It is your burden as the Plaintiff to prove the causality, and if the Jury finds that testimony not to be credible on the causality issue, even absent an opinion to the contrary, on causality, you could still lose the case.

For our factual perspective as we now address this issue, in diametric contrast to what our perspective was as we looked at the disposition of the malicious prosecution charge, we must turn the telescope around and look through its opposite end. When we earlier in this opinion, in preparation for addressing the challenged summary judgment in favor of the appellees on the malicious prosecution count, set out at length the factual background of the case, we deliberately took that version of the evidence most favorable to Bricker as the non-moving party on that motion. As we now look, by contrast, at the disposition of Bricker's motion for summary judgment on the breach of contract count, Bricker has become the moving party. On this issue, therefore, we will assume the truth of that version of the evidence most favorable to Great American.

Judge Sweeney filed an Opinion and Order dated December 21, 2001 denying Bricker's motion for summary judgment. Without question, Great American demonstrated that there was a genuine dispute of material fact as to whether the fall caused the injuries to Bricker's shoulder and lower back for which he sought payment for the medical diagnosis and treatment he received. We affirm Judge Sweeney's order denying Bricker's motion for summary judgment.

## B. Judgment on the Merits In Favor of Great American

The trial on the merits on the breach of contract claim was held on January 22, 2002, before Judge Sweeney, sitting without a jury. At the end of the plaintiff's case, Judge Sweeney entered judgment in favor of Great American.

█ Rule 2–519(b) provides that when the defendant moves for judgment at the close of the plaintiff's case in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff. Unlike a jury trial, the trial judge is not compelled to make any evidentiary inferences in favor of the party against whom the motion for judgment is made. Review of the decision of the trial court on the evidence is governed by the "clearly erroneous" standard set out in Rule 8–131(c) and

the trial judge is "allowed to evaluate the evidence as though he were the jury, and to draw his own conclusions as to the evidence presented, the inferences arising therefrom and the credibility of the witnesses testifying." *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 352, 517 A.2d 1122 (1986); *Boyd v. Bowen,* 145 Md.App. 635, 649, 806 A.2d 314 (2002); *Lettering v. Guy,* 321 Md. 305, 307–08, 582 A.2d 996 (1990).

■ The only evidence at trial was a list of medical expenses and Bricker's testimony on the onset of pain, the treatment he received, and his description of the pre-existing injuries (the shoulder problem dated from 1989, the lower back was a condition first noticed in junior high—he is now 49 years old).

After brief argument, Judge Sweeney ruled:

[T]he Court has before it the Defendant's Motion for Judgment at the conclusion of the Plaintiff's case. The Court will grant that Motion and enter Judgment for the Defendant.

The Court believes that the Plaintiff has failed to sustain in the presentation this morning evidence that would prove the case against the Defendant on the issue of the damages sustained in the causal relationship of the event to those damages. And for those reasons, the Defendant's Motion for Judgment at the conclusion of the Plaintiff's case, is granted.

Bizarrely, Bricker, in arguing on this issue relies exclusively on the transcribed testimony of 1) Dr. Robert T. Fisher and 2) Dr. Charles M. Citrin. Those transcripts, however, were not in evidence at the trial of the breach of contract claim. On this issue, they do not exist.

On a basic question of fact-finding, Judge Sweeney, as the fact-finder, was not persuaded as to the necessary "causal relationship of the event to those damages." The appellant contends that Judge Sweeney's finding in that regard was clearly erroneous.

■ Although it is not uncommon for a fact-finding judge to be clearly erroneous when he is affirmatively **PERSUADED** of something, it is, as in this case, almost impossible for a judge to be clearly erroneous when he is simply **NOT PERSUADED** of something. As to the critical difference between applying the "clearly erroneous" standard of appellate review 1) to a case of a fact-finding judge's being actually **PERSUADED** and 2) to a case of a fact-finding judge's being simply **UNPERSUADED,** this Court observed with respect to that difference in *Starke v. Starke,* 134 Md.App. 663, 680–81, 761 A.2d 355 (2000):

> [I]t is far easier to sustain as not clearly erroneous the decisional phenomenon of not being persuaded than it is to sustain the very different decisional phenomenon of being persuaded. Actually to be persuaded of something requires a requisite degree of certainty on the part of the fact finder (the use of a particular burden of persuasion) based on legally adequate evidentiary support (the satisfaction of a particular burden of production by the proponent). There are with reasonable frequency reversible errors in those regards. *Mere non-persuasion,* on the other hand, *requires nothing but a state of honest doubt. It is virtually,* albeit perhaps not totally, *impossible to find reversible error in that regard.*

(Emphasis supplied). See also *Pollard's Towing v. Berman's Body Frame,* 137 Md.App. 277, 289–90, 768 A.2d 131 (2001):

> In this case, all that was required was that the Board be **not persuaded** that there was a need for additional towing services. To the extent its finding was weightier than that, the incremental weight was surplusage. *Far less is required to support a merely negative instance of non-persuasion than is required to support an affirmative instance of actually being persuaded of something.*

(Emphasis supplied).

Without suggesting for a moment that our decision might have been otherwise even if, on the causal connection issue, the affirmative burden of persuasion had been imposed on the

appellees, it is important to note, and it should always be noted in every case, on which party the burden of persuasion rested. On this issue the appellees enjoyed the luxury of not having to prove anything. They could simply sit back and rest content as the appellant failed to carry his burden of persuasion.

Judge Sweeney, in his fact-finding capacity and enjoying the exclusive prerogatives of assessing credibility and weighing evidence, was unpersuaded by the appellant. It was the appellant who bore the risk of non-persuasion. In *Angelini v. Harford County,* 144 Md.App. 369, 378, 798 A.2d 26 (2002), we spoke of how little, if anything, it takes to be legitimately unpersuaded.

> There is a subtle, but critical, difference between 1) being **PERSUADED NOT TO DO** something and 2) being **NOT PERSUADED TO DO** something. The difference is far from trivial. The former requires some measure of persuasion; the latter requires none. The former carries with it a burden of production; the latter does not.

We cannot say that Judge Sweeney's conclusion that he was unpersuaded on the issue of causality was clearly erroneous. We could not possibly say so without substituting our assessment of witness credibility for his and our weighing of the evidence for his. That is not our function.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**