946 A.2d 542

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**John A. ELMENDORF.**

**Misc. Docket AG No. 57, Sept. Term, 2006.**

Court of Appeals of Maryland.

April 17, 2008.

James P. Botluk, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Comm.), for Petitioner.

John A. Elmendorf, Germantown, for Respondent.

**354**

Argued Before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, specially assigned) and DALE R. CATHELL, (Retired, specially assigned), JJ.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action against John A. Elmendorf, the respondent. The petition charged that the respondent violated Rules 1.2, Scope of Representation,[2] Rule 4.1, Truthfulness in Statements to Others,[3] and 8.4, Misconduct,[4] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.

---

**1.** Maryland Rule 16–751, as relevant, provides:

"(a) *Commencement of disciplinary or remedial action.* (1) *Upon approval of the Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

**2.** Rule 1.2, as relevant, provides:

\* \* \* \*

"(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the new law."

**3.** Rule 4.1 provides:

"(a) In the course of representing a client a lawyer shall not knowingly:
"(1) make a false statement of material fact or law to a third person; or
"(2) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client
"(b) The duties stated in this Rule apply even if compliance requires disclosure of information otherwise protected by Rule 1.6."

**4.** Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:
\* \* \* \*
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

We referred the case, pursuant to Rule 16–752(a),[5] to the Honorable S. Michael Pincus, of the Circuit Court for Montgomery County, for hearing and to make findings of fact and draw conclusions of law. The respondent filed an answer to the Petition and both parties appeared at and presented testimony, documentary evidence and argument at the hearing held on the Petition. Following the hearing, the hearing court, pursuant to Rule 16–757(c),[6] found facts by the clear and convincing standard and drew conclusions of law, as follows:

### *"Findings of Fact and Conclusions of Law*

"1.) *Suggesting to a Person That it is Acceptable to Misrepresent Information to the Court*

"a.) *Findings of Fact*

"In July 2003, Respondent became acquainted with a woman named Laura McCarthy through an internet dating site. Respondent's communications and interactions with Ms. McCarthy were principally of a social nature. On the afternoon of

---

"(d) engage in conduct that is prejudicial to the administration of justice."

\* \* \* \*

**5.** Maryland Rule 16–752(a) provides:

"(a) *Order.* Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

**6.** Maryland Rule 16–757(c) provides:

"(c) *Findings and conclusions.* The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

July 28, 2003, Ms. McCarthy and the Respondent exchanged a series of electronic mail messages in which Ms. McCarthy sought information about grounds for divorce. Specifically, Ms. McCarthy inquired as to whether there was any way to get around the requirement that the parties be separated one year in order to obtain a no-fault divorce. Respondent sent a brief, off-the-cuff response via e-mail, to wit:

"You can file whatever you want so long as the parties say that it has been a year, the court won't question it so long as the parties agree to that."

Although this statement does not expressly state that it is acceptable to lie to the Court in order to obtain certain relief, Ms. McCarthy could have reasonably construed it to suggest that the parties could agree to present false testimony to obtain a divorce earlier than permitted by law.

"Respondent had dinner with Ms. McCarthy two days later. At dinner, Ms. McCarthy told Respondent that she did not recall seeing his e-mail. She clarified that she was looking to find out whether she would have to be separated for a year if she alleged abuse by her husband. There is no indication that Ms. McCarthy did not seek any further information or direction from the Respondent on this subject. Ms. McCarthy never retained the Respondent to represent her and there is no evidence that she ever intended to do so.

"b.) *Conclusions of Law*

"The Commission contends that by engaging in this behavior, Respondent violated sections 1.2(d) and 8.4(d) of the Maryland Rules of Professional Conduct.... This Court concludes that although Ms. McCarthy knew that the Respondent was an attorney, and although the subject matter of the conversation concerned legal issues, the overall nature of their relationship and the content of the communication in question were such that no attorney-client relationship was established. Consequently, Respondent can not be, and is not, in violation of Rule 1.2(d). However, this Court reaches a different result by applying Rule 8.4(d) to Respondent's conduct.... As stat-

ed above, this Court is of the opinion that Respondent's e-mail of July 28, 2003 was such that it could have given Ms. McCarthy the impression that intentionally misrepresenting information to the Court is acceptable so long as all parties involved set forth the same information. Because the administration of justice is premised on the notion that the parties and witnesses should tell the truth to the Court, the Court finds by clear and convincing evidence that Respondent's actions in this matter are prejudicial to the administration of justice. Accordingly, this Court finds that Respondent stands in violation of Rule 8.4(d) on this issue.

"2.) Miscommunications About Whether a Lien was Recorded

"a.) *Findings of Fact*

"Respondent represented Huntley Square Condominium Association in various matters including the collection of delinquent accounts. Respondent was required to collect fees owed to the Condominium by Amelia C. Dodson, who owned a residential unit therein. As a result, on November 1, 2003, Respondent prepared and sent to Ms. Dodson a 'Notice of Intention to File Lien.' This Notice informed Ms. Dodson of her current indebtedness and further informed her that, if she did not pay the debt within 30 days, a lien may be recorded against the property. Ms. Dodson subsequently signed a Confessed Judgment Promissory Note, agreeing to make payments on the debt from January 2004 to June 2004. In December 2003, Respondent prepared a Statement of Lien, but did *not* record this lien. No further action was taken on this case between December 2003 and April 2004. Further, and of significant importance, Ms. Dodson allegedly did not make her promised payments during this period.

"Respondent, on April 12, 2004, issued a standard 'Final Notice of Foreclosure' to Ms. Dodson. Among other things, this letter mistakenly stated that a lien had been recorded against the property and that foreclosure would be the next step, in the event the debt was not paid by Dodson within 30 days. Although Respondent could have seen from a review of

the file that the lien had not actually been recorded, Respondent was operating under the mistaken assumption that the subject lien had in fact been recorded by his paralegal back in December, 2003.

"On May 12, 2004, Respondent had a conversation with the law offices of James Almand, Esquire. Mr. Almand was now representing Ms. Dodson in connection with her divorce. During this exchange, Respondent realized that the lien in question had in fact *not* been recorded, and Respondent subsequently informed Mr. Almand that he would 'immediately' remedy this error by filing the lien. Unfortunately, the lien could not be filed immediately because the Huntley Square Condominium Association, Respondent's client, had not deposited the requisite funds needed for this transaction into the escrow account. Despite the fact that Respondent had told Mr. Almand that he would 'immediately' file the lien, Respondent failed to promptly notify Mr. Almand that, in fact, the lien still could not be recorded. However, Respondent and Mr. Almand began another series of communications beginning on or about May 18, 2004, in which the two attorneys agreed to suspend any collection activities regarding Ms. Dodson (so that she could pay off the debt as soon as her divorce case provided sufficient funds.) . . .

"b.) *Conclusions of Law*

"The Commission contends that by engaging in the above behavior, Respondent violated Sections 4.1(a) and 8.4(c) of the Maryland Rules of Professional Conduct.... In this case, the Court does not find by clear and convincing evidence that Respondent violated Rule 4.1(a). The evidence presented at trial shows that [R]espondent was negligent in not reviewing the file in the Dodson matter on April 12, 2004, when he issued the 'Final Notice of Foreclosure' letter under the mistaken assumption that a lien had already been filed in the matter. On May 12, 2004, Respondent became aware of the error, and promptly notified opposing counsel's office of the fact that the lien had not yet been filed, but that it would be filed to protect the interests of Respondent's client.

"Based on the lack of intent evidenced by Respondent's mistaken belief that the lien had been recorded, Respondent's efforts in May, 2004 to inform opposing counsel of the error, and the subsequent communications whereby Respondent agreed to suspend collection activities against Ms. Dodson, the Court cannot find that Respondent 'knowingly made a false statement of material fact to a third person.' Accordingly, Respondent did not violate Rule 4.1(a).

"Additionally, this Court does not find by clear and convincing evidence that the Respondent violated Rule 8.4(c) by his behavior during this incident. For the reasons stated above, Respondent may have been negligent in his failure to properly review the file before sending out the April 12, 2004 letter, but his actions in April and May 2004 do not rise to the level of 'conduct involving fraud, deceit, or misrepresentation.' "

Taking no exceptions to the hearing court's findings of fact and conclusions of law, the petitioner recommends, as a sanction, that the respondent be suspended from the practice of law for at least two years. Acknowledging that the respondent did not represent Ms. McCarthy, but emphasizing that she was aware that he was a lawyer and sought legal information from him "regarding ways to get around the requirement of a one-year separation," it likens the respondent's conduct to subornation of perjury, of which, the petitioner points out, it has been said, "[n]o more serious offense can be committed against our system of justice, which cannot function without truthful sworn testimony." *Louisiana State Bar Ass'n v. Stewart*, 500 So.2d 360, 363 (La.1987). To justify the recommended sanction, the petitioner relies on cases in which the sanctioned attorney's misconduct consisted of, or involved, "advising or assisting clients and others to act dishonestly or to disobey court orders." to wit: *Attorney Grievance Comm'n v. Protokowicz*, 329 Md. 252, 258, 619 A.2d 100, 103 (1993); *Attorney Grievance Comm'n v. Pak*, 400 Md. 567, 607, 929 A.2d 546, 569–70 (2007); *Attorney Grievance Comm'n v. Culver*, 381 Md. 241, 275–76, 849 A.2d 423, 443–44 (2004); *Attorney Grievance Comm'n v. Hall*, 298 Md. 230, 235–36, 468 A.2d

347, 350–51 (1983); *Attorney Grievance Comm'n v. Kerpelman,* 288 Md. 341, 379–80, 420 A.2d 940, 958 (1980).

The respondent also does not except to the hearing court's factual findings or conclusions of law. He maintains, however, that there are "mitigating facts and evidence brought out at the evidentiary hearing, and contained in the record transcript," which must be taken into account, although "not alluded to in the Judge's Memorandum Opinion." Conceding that the e-mail to Ms. McCarthy "was both, ill-advised, as well as poorly worded, such that it left open the possibility that she might construe the email as an encouragement to misrepresent facts to the Court," the respondent asserts that subsequent discussions he had with her made manifest his lack of intent that she so construe it and, in fact, is "evidence ... of his steps to remediate any potential misinterpretation by Ms. McCarthy had she ever seen [7] the subject email." Therefore, taking full responsibility for his careless use of language in the e-mail, the respondent submits that "an" appropriate sanction for the unintentional violation of Rule 8.4(d) is a public reprimand, and the sanction that he "requests" this Court to impose in this case.

Neither party having taken exceptions to the factual findings, and, indeed, having no disagreement with regard to the facts, we treat the findings of fact as established. Rule 16–759(b) (2)(A).[8] *See Attorney Grievance Comm'n v. Logan,* 390 Md. 313, 319, 888 A.2d 359, 363 (2005). This leaves for resolution only the question as to the appropriate sanction to be imposed.

The cases on which the petitioner relies are not apposite.

---

7. In its Memorandum Opinion, the hearing Court noted that, at dinner two days after the e-mail was sent, "Ms. McCarthy told Respondent that she did not recall seeing his e-mail."

8. Maryland Rule 16–759(b)(2)(A) provides:

"(A) If No Exceptions Are Filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any."

In all of them, except Hall,[9] the respondent was found to have violated Rules other than Rule 8.4(d) and to have engaged in conduct other than that which is at the heart of this case— assisting or advising clients to act dishonestly or fraudulently. In *Protokowicz,* in addition to Rule 8.4, the respondent was found to have violated Rule 1.2(d),[10] and Rule 3.4(a).[11] Rules 3.3 (Candor Toward the Tribunal), 4.1 (Truthfulness in Statements to Others), 5.5 (Unauthorized Practice of Law), and

---

**9.** Hall "counseled and assisted [his client] in her efforts to obtain public assistance by misleading representations to third parties when her entitlement to such benefits was questionable," thus violating DR 7–102(A) and DR 7–102(B)(1), which, respectively provided, as relevant:

"In his representation of a client, a lawyer shall not:

\* \* \* \*

"(5) Knowingly make a false statement of law or fact.

\* \* \* \*

"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

and

"A lawyer who receives information clearly establishing that:

"(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal."

*Attorney Grievance Comm'n v. Hall,* 298 Md. 230, 235–236, 468 A.2d 347, 350 (1983).

**10.** As we have seen, the respondent was also charged with this Rule violation, but the hearing judge did not find a violation since the respondent did not have a client attorney relationship with Ms. McCarthy. While there was no attorney client relationship between Protokowicz and his roommate when the misconduct occurred, the hearing court in that case found a violation, reasoning:

"although respondent no longer formally represented Mr. Sanders at the time of the break-in, he had nevertheless 'counseled Mr. Sanders regarding the property and assisted Mr. Sanders in the criminal activity.'"

*Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 258, 619 A.2d 100, 103 (1993).

**11.** Rule 3.4 of the Maryland Rules of Professional Responsibility provided:

"A lawyer shall not:

"(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act. . . ."

8.4(c) and (d) (Misconduct) were at issue in *Pak.* 400 Md. at 574–75, 929 A.2d at 550. In *Culver,* the Rules found to have been violated were 1.2 (Scope of Representation), 1.3 (Diligence), 1.5 (Fees), 1.7 (Conflict of Interest: General Rule), 1.15 (Safekeeping Property), 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.4 (Fairness to Opposing Party and Counsel), and 8.4(b), (c), (d) (Misconduct). 381 Md. at 249, 849 A.2d at 427–28. At issue in *Kerpelman,* were DR 1–102(A)(1), (4), (5), and (6); DR 7–102(A)(7); and DR 7–106(A).[12] 288 Md. at 344, 420 A.2d at 941. In each of the cases, more importantly, the attorney actually engaged in the conduct alleged, he or she actually assisted his or her client or intentionally gave the offending advice, intending that it be followed and acted upon; there was no suggestion of negligence or inadvertence about it.[13]

---

**12.** We characterized what these Rules required:
"These latter disciplinary rules state in pertinent part:DR 1–102 Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule. (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his fitness to practice law. DR 7–102 Representing a Client Within the Bounds of the Law. (A) In his representation of a client, a lawyer shall not: (7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent. DR 7–106 Trial Conduct. (A) A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling."
*Attorney Grievance Comm'n v. Kerpelman,* 288 Md. 341, 344, 420 A.2d 940, 941 (1980).

**13.** The petitioner also relies on out of state cases, none of which is apposite or particularly similar factually. In *In re Storment,* 873 S.W.2d 227, 228 (Mo.1994), not only did the respondent offer the perjured testimony of his client denying that she committed adultery while her eighteen month old child was in the same bed, it was he who told her, "You better deny this. Eighteen months old, Jesus." The respondent in *People ex rel. Atty. Gen. v. Beattie,* 137 Ill. 553, 27 N.E. 1096, 1098–1100 (1891) was found to have "introduc[ed] before the court testimony which was false and perjured, and which he knew to be false and perjured." In *In re Griffith,* 283 Ala. 527, 219 So.2d 357, 360 (1969), the respondent "made various false representations to courts in this State pertaining to the residency of certain of his clients in so-called 'quickie divorce' cases." To like effect, *see In re Harrell,* 156 Fla.

 By way of contrast, the hearing court found, not that the respondent intentionally engaged in the conduct, or gave the advice intending it to be followed, but simply that it "was such that it *could have* given Ms. McCarthy the impression that intentionally misrepresenting information to the Court is acceptable as long as the parties set forth the same information." When the circumstance that the respondent discussed the e-mail with Ms. McCarthy a couple of days later and learned that she did not remember seeing the e-mail, and the fact that there is no indication that she acted on the e-mail, are taken into account, it is clear that there is a huge difference, so far as culpability is concerned, between what the respondents in the cases on which the petitioner relies did and what the respondent in this case did.

 We have made clear so many times as not to require citation to authority that the purpose of attorney disciplinary proceedings is not to punish the erring attorney, only to protect the clients whom attorneys serve. To impose a sanction other than a reprimand, under the circumstances exant, would be, we believe, simply punishment. Accordingly, the respondent is hereby reprimanded.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN A. ELMENDORF.

---

327, 23 So.2d 92 (1945); *In re McKay*, 280 Ala. 174, 191 So.2d 1 (1966).