967 A.2d 198

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Thomas Howard QUEEN.**

**Misc. Docket AG No. 54, Sept. Term, 2007.**

Court of Appeals of Maryland.

March 12, 2009.

558

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for Petitioner.

Melvin G. Bergman, Greenbelt, for Respondent.

Argued before BELL, C.J. HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

Thomas Howard Queen, Respondent, was admitted to the District of Columbia Bar in January of 1968, and to the Maryland Bar on June 6, 1984. On December 11, 2007, the Attorney Grievance Commission of Maryland filed a Petition for Disciplinary or Remedial Action in which it asserted that Respondent violated several Maryland Rules of Professional Conduct. On December 14, 2007, this Court ordered that the charges contained in the petition "be heard and determined by Judge Cathy Hollenberg Serrette, of the Seventh Judicial Circuit[.]"

Following a September 4, 2008 hearing in the Circuit Court for Prince George's County, the hearing judge filed FIND-INGS OF FACT AND CONCLUSIONS OF LAW that included the following findings and conclusions:

### Findings of Fact

The facts underlying the alleged violations are, for the most part, undisputed. The complainant, Maria Abarza, was injured when she tripped on an uneven concrete slab on the grounds of the Prince George's County Justice Center complex in Hyattsville, Maryland, on February 19, 2002. She incurred medical expenses of approximately $5,693.99 as a result of the accident. Ms. Abarza retained Respon-

dent to file a claim. She had been referred by a family member, Linda Williams, Respondent's legal secretary.

Soon after the initial meeting with Ms. Abarza, Respondent visited the scene of the accident, met with Ms. Abarza's daughter, Judge Caldwell, and contacted an expert to evaluate the scene of the accident. On August 8, 2002, Respondent timely placed Prince George's County on notice of the pending claim. In September of 2002, Prince George's County denied liability claiming that the property where Ms. Abarza had fallen belonged to the City of Hyattsville. In October of 2003, Respondent contacted the City of Hyattsville, which in November, 2003, asserted that the property belonged to Prince George's County.

On February 22, 2005, Respondent filed suit against the City of Hyattsville, the Mayor of the City of Hyattsville, the City Council of the City of Hyattsville, the Hyattsville City Police Department and the Prince George's County Government seeking damages of $40,000.00.

On March 31, 2005, Prince George's County filed a Motion to Dismiss asserting that Respondent had identified said Defendant as "Prince George's County Government," (as it had been identified by the County's insurance carrier), rather than "Prince George's County, Maryland," the proper appellation. Respondent failed to correct the misnomer or file an opposition, and on June 22, 2005, the action against Prince George's County was dismissed. The City of Hyattsville filed a preliminary motion denying ownership of the property in dispute. It too was dismissed on June 22, 2005.

On July 22, 2005, Respondent filed a Motion to Set Aside the Dismissal of the Action Entered In Favor of Defendant Prince George's County and For Reconsideration. When the request was denied, Respondent noted an appeal. Appellant's brief was due by April 10, 2006. Respondent failed to submit a brief, and the case was dismissed. Respondent moved for reconsideration on June 19, 2006, and the appeal was reinstated on August 3, 2006. The appeal was again dismissed when Respondent failed to file a brief.

Respondent neglected to inform Ms. Abarza about the trial court's dismissal of the case in June of 2005. In June of 2006, Respondent met with his client and her family and advised them about the status of the case. At that time, Respondent recommended that Ms. Abarza seek independent counsel to pursue a claim against Respondent. Ms. Abarza was provided a packet of the materials from her case to enable independent counsel to assess damages and evaluate the claim against Respondent. Ms. Abarza thereafter hired Attorney Jeffrey Ashin, and on September 27, 2007, Respondent and Ms. Abarza reached a settlement in the amount of $30,000.00. Respondent paid Ms. [Abarza] from his personal assets and did not submit the claim to his malpractice carrier.

## CONCLUSIONS OF LAW

### MARYLAND RULES OF PROF'L CONDUCT
### 1.1—COMPETENCE

*A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.*

\* \* \*

Respondent was negligent in failing to oppose the County's Motion to Dismiss, but appropriately filed a timely request for reconsideration seeking to correctly identify Defendant "Prince George's County, Maryland". When the trial court refused to reconsider, Respondent timely noted an appeal. His inexplicable failure to file an appellate brief after his misstep below was apparently an uncharacteristic oversight endemic to his handling of Ms. Abarza's case.

\* \* \*

In sum, Respondent had the knowledge and skill to handle Ms. Abarza's case. However, the representation lacked adequate thoroughness and preparation in violation of MRPC 1.1.

## *MARYLAND RULES OF PROF'L CONDUCT 1.3—DILIGENCE*

*A lawyer shall act with reasonable diligence and prompt-ness in representing a client.*

\* \* \*

... For the same reasons Respondent is deemed to have violated MRPC 1.1, Respondent is deemed to have failed to act with reasonable diligence and promptness in violation of MRPC 1.3.

## *MARYLAND RULES OF PROF'L CONDUCT 1.4—COMMUNICATION*

*(a) A lawyer shall:*

\* \* \*

*(2) keep the client reasonably informed about the status of the matter;*

*(3) promptly comply with reasonable requests for information; and*

\* \* \*

*(b) A lawyer shall explain a matter to the extent* reason-ably *necessary to permit the client to make informed deci-sions regarding the representation.*

\* \* \*

Respondent denied that he had failed to maintain appro-priate communication with Ms. Abarza. He relied, however, in large part, on his paralegal and legal secretary to main-tain contact.

\* \* \*

Petitioner failed to establish by clear and convincing evidence that Respondent violated MRPC 1.4.

\* \* \*

### MARYLAND RULES OF PROF'L CONDUCT
### 8.1(b)—DISCIPLINARY MATTERS

*[A] lawyer ... in connection with a disciplinary matter, shall not:*

*(b) knowingly fail to respond to a lawful demand for information from* [a] *disciplinary authority[.]*

\* \* \*

It was not shown by clear and convincing evidence that Respondent knowingly failed to respond to Bar Counsel, and accordingly, a violation of MRPC 8.1(b) was not established.

### MARYLAND RULES OF PROF'L CONDUCT
### 8.4(d)—MISCONDUCT

*It is professional misconduct for a lawyer to:*

*(d) engage in conduct that is prejudicial to the administration of justice.*

\* \* \*

Respondent's conduct in the Abarza case appeared to have been an aberration. There was no offense involving moral turpitude, no indication of indifference to legal obligations, no serious interference with the administration of justice, or conduct that would seriously impair public confidence in the profession. In short, Respondent was negligent in his handling of Ms. Abarza's case. He was honest with his client about his mistakes and urged her to hire independent counsel to pursue a malpractice claim [against him]. Upon reaching a settlement, [Respondent] compensated Ms. Abarza from his personal resources without resort to his malpractice carrier.

This Court does not find that respondent violated MRPC 8.4(d).

### Mitigation
\* \* \*

Respondent was clearly remorseful. His recommendation to Ms. Abarza that she hire counsel to assert a claim against him while there was a remote possibility that her action against Prince George's County could be revived coupled with his payment to Ms. Abarza without resort to his malpractice carrier evidenced an understanding of his mistakes and a principled effort to ensure that Ms. Abarza was fairly and fully compensated. No selfish motive was shown.

There is no reason to believe that the misconduct will be repeated. Even Petitioner's witness, Linda Williams, testified that Respondent was a workaholic and that his mishandling of Ms. Abarza's case was out of character.

Respondent has historically responded appropriately to inquiries by the Attorney Grievance Commission. After almost forty years of practice, this is the first time that Respondent will be subjected to discipline.

(Emphasis in original; footnotes omitted).

The Commission has (1) taken "exception to the [hearing judge's] failure to find that Respondent violated Maryland Lawyers' Rule of Professional Conduct 1.4, 8.1(b) and 8.4(d)," and (2) recommended that this Court impose "an indefinite suspension with the right to apply for reinstatement no sooner than ninety (90) days from the date of the suspension." Respondent argues that, "under the circumstances of this case, and in light of the strong mitigating circumstances found by the trial Court, and [Respondent's] long unblemished record, . . . a public reprimand would be an appropriate sanction in this matter." For the reasons that follow, we shall sustain the Commission's exception as to the 8.1(b) violation, and issue a public reprimand.

## Standard of Review

In *Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 952 A.2d 226 (2008), this Court stated:

"This Court has original and complete jurisdiction over attorney discipline proceedings" in Maryland. *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d

1080, 1083 (1998). Even though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. *Attorney Grievance Comm'n v. Zdravkovich,* 375 Md. 110, 126, 825 A.2d 418, 427, (2003). This Court gives deference to the hearing judge's assessment of the credibility of witnesses. *Id.* Factual findings by the hearing judge [that the Commission has satisfied its burden of persuasion] will not be interfered with if they are founded on clear and convincing evidence. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court. *Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004).

*Id.* at 368, 952 A.2d at 235–36.

### The Commission's Exceptions

 Because it would be unfair to require that a busy lawyer who is "up to the elbows" in a trial or in a transaction must "drop everything" and work on nothing else until completing his or her response to Bar Counsel's request for information, the lawyer who receives such a request can comply with the requirements of Rule 8.1(b) by (1) acknowledging receipt of Bar Counsel's request, (2) explaining why he or she needs an extension of time to file a response, and (3) requesting that Bar Counsel consent to an extension for a reasonable period of time. The case at bar, however, involves a December, 2006 request for information that was not acknowledged until April of 2007.

The record includes a stipulation that Respondent did not obtain counsel until March of 2007. During Respondent's cross-examination, he conceded that he received the Commission's first request for information, which was made in a letter dated December 11, 2006, and that he received three more written requests-in letters dated January 31, 2007, February 28, 2007, and March 16, 2007–before his counsel responded on his behalf in a letter dated April 5, 2007. In *Attorney*

*Grievance Comm'n v. Tolar,* 357 Md. 569, 745 A.2d 1045 (2000), this Court agreed with the hearing court's conclusion that the "[r]espondent violated Rule 8.1(b) by knowingly failing to respond to Bar Counsel's requests in this matter from approximately November 20, 1997, until February 12, 1998." *Id.* at 582, 745 A.2d at 1052. We therefore agree with the Commission that an April 5, 2007 acknowledgment of a December 6, 2006 request for information constitutes a violation of Rule 8.1(b).

Had Respondent not made (in the words of the hearing judge) "a principled effort to ensure that Ms. Abarza was fairly and fully compensated[,]" we would have sustained the Commission's exception to the hearing judge's finding that the negligent handling of Ms. Abarza's case was not prejudicial to the administration of justice.[1] In light of the hearing judge's non-clearly erroneous factual findings, however, each of the other exceptions is hereby overruled.[2]

---

**1.** Had Respondent merely turned Ms. Abarza's claim over to his malpractice carrier, the carrier might have chosen to defend Ms. Abarza's malpractice action on the ground that she was not entitled to a judgment against Respondent because the doctrines of contributory negligence or assumption of the risk would have prevented her from recovering any damages in the "slip and fall" action that Respondent had attempted to assert on her behalf. As the hearing judge noted, however, "[Respondent's] recommendation to Ms. Abarza that she hire counsel to assert a claim against him while there was a remote possibility that her action against Prince George's County could be revived coupled with his payment to Ms. Abarza without resort to his malpractice carrier evidenced an understanding of his mistakes and a principled effort to ensure that Ms. Abarza was fairly and fully compensated." Because the hearing judge was not clearly erroneous in finding that "Ms. Abarza was fairly and fully compensated," Respondent's negligent handling of her case did not constitute a violation of Rule 8.4(d).

**2.** As to the issue of whether Respondent violated Rule 1.4, the hearing judge's Findings and Conclusions included a footnote stating that "Ms. Abarza was unclear as to how often she had spoken with Respondent[,] . . . forgot that she had filed the instant grievance[,] and that she had settled her claim against Respondent." Under these circumstances, we are unable to declare that the hearing judge was clearly erroneous in rejecting "permissible inferences which might have been drawn from the evidence by another trier of the facts." *Hous. Opportunities*

## The Sanction

In *Attorney Grievance Comm'n v. Elmendorf,* 404 Md. 353, 946 A.2d 542 (2008), this Court stated:

> We have made clear so many times as not to require citation to authority that the purpose of attorney disciplinary proceedings is not to punish the erring attorney, only to protect the clients whom attorneys serve.

*Id.* at 363, 946 A.2d at 548.

In *Attorney Grievance Comm'n v. Taylor,* 405 Md. 697, 955 A.2d 755 (2008), this Court stated:

> We are mindful that our aim is to protect the public and the public's confidence in the legal profession rather than to punish the attorney. *[Attorney Grievance Comm'n v. Kreamer],* 404 Md. [282,] 348, 946 A.2d [500] at 539 [ (2008) ]. We aim also to deter other lawyers from violating the Rules of Professional Conduct. *Id.* The public is best protected when sanctions are imposed commensurate with the nature and the gravity of the misconduct and the intent with which it was committed. *Attorney Grievance Comm'n v. Reinhardt,* 391 Md. 209, 223, 892 A.2d 533, 541 (2006).

The severity of the sanction depends upon the facts and circumstances of the case, taking account of any particular aggravating or mitigating factors. *Attorney Griev. Comm. v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 480 (1996). In determining the appropriate sanction, we have often looked to the American Bar Association's *Standards for Imposing*

---

*Comm'n of Montgomery County v. Lacey,* 322 Md. 56, 61, 585 A.2d 219, 222 (1991). As the Court of Special Appeals noted in *Bricker v. Warch,* 152 Md.App. 119, 831 A.2d 453 (2003):

> Although it is not uncommon for a fact-finding judge to be clearly erroneous when he [or she] is affirmatively **PERSUADED** of something, it is, as in this case, almost impossible for a judge to be clearly erroneous when he [or she] is simply **NOT PERSUADED** of something.

*Id.* at 137, 831 A.2d at 464 (emphasis in original). We therefore overrule Petitioner's exception to the hearing judge's failure to find a violation of Rule 1.4.

*Lawyer Sanctions,* reprinted in LAWYERS' MANUAL ON PROFESSIONAL CONDUCT (2003) *(ABA Standards).* *Id.* at 488, 671 A.2d at 483. These standards create an organizational framework that calls for a consideration of four questions: (1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances? *See ABA Standards,* Standard 3.0, at 17. Also relevant are the following factors:

> "Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses."

*Id.* at 488–89, 671 A.2d at 483 (quoting ABA Standards, Standard 9.32, at 41–42).

*Id.* at 720–21, 955 A.2d at 768–69.

The Commission argues that the following cases support its recommendation that Respondent be suspended indefinitely with the right to apply for reinstatement no sooner than ninety days: *Ugwuonye, supra; Attorney Grievance Comm'n v. David,* 331 Md. 317, 628 A.2d 178 (1993); *Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 784 A.2d 516 (2001); *Attorney Grievance Comm'n v. Reinhardt,* 391 Md. 209, 892 A.2d 533 (2006); and *Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 760 A.2d 1108 (2000). We are persuaded, however, that the issuance of a reprimand in the case at bar would not be inconsistent with any of these cases.

In *Ugwuonye,* this Court imposed a ninety day suspension on an attorney who was found to have violated several Rules of Professional Conduct, including the failure to return the

unearned portion of a retainer fee upon termination of representation, and the failure "to deposit [a $3,500] retainer into a client trust or escrow account when the fee was unearned at the time it was received[.]" 405 Md. at 371, 952 A.2d at 238. No such violations occurred in the case at bar.

In *David,* this Court imposed an indefinite suspension, with the right to apply for reinstatement no sooner than six months, on an attorney who had failed to (1) return an unearned fee for a period of nine months, (2) timely remit funds received on behalf of a client, (3) communicate with his clients, and (4) failed to answer Bar Counsel's requests for information about three of four clients whose representation by the attorney had been "marked by serious neglect and inattention." 331 Md. at 323, 628 A.2d at 181. In *Harris,* this Court imposed a six month suspension on an attorney who had three prior sanctions and whose "violations show[ed] a recurring pattern of behavior that [was] serious enough to warrant suspension for [that] this length of time." 366 Md. at 406, 784 A.2d at 533. In the case at bar, which involves the negligent handling of a single case, we agree with the hearing judge's finding that "[t]here is no reason to believe that the misconduct will be repeated."

In *Reinhardt,* this Court imposed an indefinite suspension on an attorney who, after ignoring his client's repeated requests for information about the status of her case, "misrepresented the truth when he [eventually] told his client that he was working on the case when, in fact, he had lost the file and was not working on the case at all." 391 Md. at 222, 892 A.2d at 540. In the case at bar, Respondent (in the words of the hearing judge) "was honest with his client about his mistakes[,] urged her to hire independent counsel to pursue a malpractice claim[, and] [u]pon reaching a settlement, ... compensated Ms. Abarza from his personal resources without resort to his malpractice carrier."

In *Fezell,* this Court imposed a sixty day suspension on an attorney who (1) failed to keep a domestic relations client informed of the status of her case, (2) failed to obtain an

uncontested divorce for the client within a period of four years, and (3) "resisted the efforts of the Commission to investigate the complaints and then attempted to justify his recalcitrance by a formalistic interpretation of procedural rules." 361 Md. at 255, 760 A.2d at 1119. Although we have found that Respondent's tardy response to Bar Counsel's requests did constitute an 8.1(b) violation, the case at bar does not involve either an obstinate refusal to cooperate or a denial of access to relevant documents. In fact, Respondent's 8.1(b) violation is much less egregious than the violation found in *Attorney Grievance Comm'n v. Bridges*, 360 Md. 489, 759 A.2d 233 (2000), in which this Court issued a reprimand to a respondent found to have "refused to provide [Bar Counsel with] requested information, failed to cooperate with the Inquiry Panel, and destroyed relevant documents." *Id.* at 512, 759 A.2d at 245.

In *Attorney Grievance Comm'n v. Mahone*, 398 Md. 257, 920 A.2d 458 (2007), this Court reprimanded an overly "zealous advocate" who "chose to insult [a] trial judge and in one instance show his disdain for the court by walking out during the judge's explanation of his reasons for his ruling." *Id.* at 270–71, 920 A.2d at 466. In that case, while rejecting the Commission's recommendation "that we impose a suspension 'to send a clear message to the Bar that deliberately disruptive conduct by attorneys in court cannot be tolerated[,]' " this Court stated:

We can send that message, in the present case, without disrupting Respondent's practice of law. *See Attorney Grievance Comm'n v. O'Neill*, 285 Md. 52, 57, 400 A.2d 415, 418 (1979) (stating, under the circumstances of that case, that imposing a reprimand means it will forever appear in a reported Maryland case that the attorney sanctioned has been found to be a liar); *Attorney Grievance Comm'n v. Tolar*, 357 Md. 569, 585, 745 A.2d 1045, 1054 (2000) (holding that a public reprimand would "serve the purpose of protecting the public just as well as a short suspension"); *Attorney Grievance Comm'n v. Jaseb*, 364 Md. 464, 475, 773 A.2d 516, 522 (2001) (concluding that a reprimand was an

appropriate sanction considering, among other factors, the attorney's lack of prior misconduct and the lack of prejudice to the client); *Attorney Grievance Comm'n v. Lee,* 390 Md. 517, 527, 890 A.2d 273, 279 (2006) (holding that a reprimand will serve notice to the respondent and the Bar that "this Court considers an attorney's lack of diligence and lack of communication with his client, serious matters").

*Id.* at 269–70, 920 A.2d at 465.

The cases of *Taylor, supra,* and *Attorney Grievance Comm'n v. Sapero,* 400 Md. 461, 929 A.2d 483 (2007), persuade us that, as was the situation in *Mahone* and the cases cited therein,[3] we can protect the public and deter other lawyers from violating the Rules of Professional Conduct without disrupting Respondent's practice of law. In *Sapero,* while issuing a reprimand to a respondent whose compliance with Bar Counsel's document requests was untimely, this Court recognized the following mitigating factors: (1) respondent's misconduct was not detrimental to his clients, not intentional, and not motivated by fraud, (2) respondent did not benefit in any way from his negligence, and expended money to correct the mismanagement of his escrow accounts, (3) respondent showed remorse for his misconduct, and persuaded the hearing judge that such misconduct was unlikely to be repeated, and (4) "respondent ha[d] no record of any prior disciplinary action." *Id.* at 490–91, 929 A.2d at 501.

In *Taylor,* while issuing a reprimand to a respondent who misused his attorney-trust account, and who "failed to make timely responses to Bar Counsel's requests for information," this Court recognized the following mitigating factors: (1) the

**3.** In *O'Neill,* the respondent was found to have made knowingly false statements to a judge, to an Assistant State's Attorney, and to a probation officer. 285 Md. at 53–4, 400 A.2d at 416. In *Jaseb,* the respondent was found to have (negligently) misrepresented "both fact and law" to a Circuit Court judge and to other parties to a garnishment proceeding. 364 Md. at 477, 773 A.2d at 523. In *Lee,* after accepting a $3,500 retainer to seek post-conviction relief on the complainant's behalf, "[r]espondent did not meet with his client until almost one year after payment of the fee." 390 Md. at 526, 890 A.2d at 278.

respondent had not misappropriated or commingled client funds, (2) the trust account violations occurred at a time when the respondent was intending to close his practice, (3) the respondent ultimately did cooperate thoroughly with Bar Counsel, (4) the respondent did not act with a selfish or dishonest motive, (5) the respondent had no prior disciplinary record, and (6) no client suffered any actual harm. 405 Md. at 721, 955 A.2d at 769.

As the mitigating factors recognized in *Sapero* and in *Taylor* are present in the case at bar, Respondent is hereby reprimanded.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST THOMAS HOWARD QUEEN.**

HARRELL, BATTAGLIA & BARBERA, JJ. dissent.

Dissenting Opinion by HARRELL, J., which BATTAGLIA and BARBERA, JJ., join.

I dissent in part and join in part the Court's opinion. I subscribe to the Court sustaining Petitioner's exception to the hearing judge's refusal to conclude that a violation of Maryland Rule of Professional Conduct ("MRPC") 8.1(b) occurred. I disagree, however, with the Court's failure to sustain Petitioner's exceptions as to the MRPC 1.4 and 8.4(d) charges and the Court's selection of a reprimand as the appropriate sanction. For myself, I would sustain each of the Attorney Grievance Commission's ("AGC") exceptions and suspend Queen indefinitely, with the right to apply for reinstatement no sooner than ninety (90) days from the effective date of the suspension.

## I.

As to the charge that Queen violated MRPC 1.4, the hearing judge's commingled findings of fact and conclusions of law do not disclose much with regard to her reasons for declaring, in a conclusory manner, that "Petitioner failed to establish by clear and convincing evidence that Respondent violated MRPC 1.4." The only hint from her findings and conclusion on this charge that reveal to me a glimpse of her possible reasoning is the credit she gives to Queen for being "fully forthcoming" about the Circuit Court's dismissal of Abarza's case, his urging of her to get another lawyer and to pursue Queen for legal malpractice, and turning over those portions of his file on her case so that the invited malpractice claim might be evaluated. While this conduct generally, and in isolation here, is praiseworthy, its value in deciding whether a violation of MRPC 1.4 occurred is slight; it is better considered in mitigation of sanction.

The violation of MRPC 1.4 occurred, it seems to me, before Queen became "fully forthcoming." MRPC 1.4 generally addresses the duty of promptness owed by attorneys to clients in communicating matters regarding the status of their cases so that clients may make informed decisions. Queen conceded that he did not discuss with Abarza that her case in the Circuit Court had been dismissed in June 2005 *until June 2006* when he met with her and her family to tell them the unauthorized appeal he took from that dismissal also had been dismissed. Both dismissals were occasioned by Queen's neglect in handling the matters properly. The hearing judge did not find that any of Queen's employees communicated these important bits of information to Abarza before he met with her a year after the initial dismissal. Had Queen communicated promptly with Abarza when the Circuit Court initially dismissed the complaint on 22 June 2005, perhaps she could have found another attorney who could have discerned properly the name of the entity to sue and revived her action in the trial court.

The hearing judge was clearly wrong in failing to recognize a violation of MRPC 1.4.

## II.

A failure to represent a client adequately violates MRPC 8.4(d). *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 83, 753 A.2d 17, 31 (2000); *Attorney Grievance Comm'n v. Brown*, 353 Md. 271, 286, 725 A.2d 1069, 1076 (1999). It is clear that Queen failed to represent Abarza adequately. The hearing judge found that he "was negligent in his handling of Ms. Abarza's case." His failure to sue the correct legal entity or amend the misnomer resulted in dismissal of her complaint in the Circuit Court. He failed to communicate this fact to her for a year. He prosecuted (badly) an unauthorized appeal and, failing twice to meet briefing deadlines, caused the appeal to be dismissed by the Court of Special Appeals. Thus, we are not confronted here with a single instance of inadequate representation, albeit all of the mishaps affected a single client.

The hearing judge, in part, premised her finding that no violation of MRPC 8.4(d) occurred on an erroneous reliance on Comment 2 to MRPC 8.4 (addressing the implications of "illegal conduct" in a criminal sense and the archaic role of moral turpitude in determining whether such offenses constitute collateral ethical violations for attorneys). Comment 2 patently is directed to interpreting the proper application of MRPC 8.4(b) and/or (c), neither of which was Queen charged with violating in this case. This misunderstanding of the utility and application of Comment 2 to an analysis of whether a violation of MRPC 8.4(d) occurred erodes my confidence in her reasoning with its insertion of situationally irrelevant consideration of the non-existence of moral turpitude in this case. Moreover, she resorts here also to consideration of facts that bear more suitably on mitigation, rather than on the question of whether a violation occurred *vel non*, i.e., Queen's belated owning-up to his client regarding his negligence and paying her a settlement of her possible claim from his own

funds. Consequently, I would conclude that a violation of MRPC 8.4(d) was proved by clear and convincing evidence.

## III.

Joining my analysis *supra* to that of the unexcepted-to portions of the hearing judge's findings and conclusions and this Court's sustaining of Petitioner's exception regarding the MRPC 8.1(b) charge, Queen stands before me as having violated MRPC 1.1, 1.3, 1.4, 8.1(b) and 8.4(d). The appropriate sanction for those violations is a difficult call.

Consideration of the sanction here caused me to recall an analysis I authored for the Court in *Attorney Grievance Commission v. Lee*, 393 Md. 546, 903 A.2d 895 (2006):

Indefinite suspension from the practice of law is the proper sanction where the attorney violates MRPC 1.3, 1.4, 8.1(b), and 8.4(d) by failing to communicate with the client and failing to cooperate with Bar Counsel and where the attorney's conduct is not so egregious that only disbarment can adequately protect the public. *Attorney Grievance Comm'n v. Kovacic*, 389 Md. 233, 884 A.2d 673 (2005). In *Kovacic*, the attorney violated MRPC 1.3, 1.4, and 8.1(b) by failing to communicate with her client in a divorce proceeding and failing to respond timely to Bar Counsel's inquiries. *Kovacic*, 389 Md. at 239, 884 A.2d at 676. Noting that there was "neither a finding, nor any basis for mitigating the respondent's misconduct," we imposed the sanction of indefinite suspension even though the attorney had no prior sanction history. *Kovacic*, 389 Md. at 240, 884 A.2d at 677. *See also Attorney Grievance Comm'n v. Rose*, 391 Md. 101, 113, 892 A.2d 469, 476 (2006) (holding that indefinite suspension is the proper sanction where the attorney violated MRPC 1.3, 1.4, 8.1(b), and 8.4(d), among others, for client neglect and failure to cooperate with Bar Counsel and had received previously an indefinite suspension with the right to seek reinstatement in six months for similar violations).

On the other hand, we also have imposed a sanction of reprimand for similar violations of the MRPC where there

are significant mitigating factors, such as remorse and a history of *pro bono* work by a respondent. *Attorney Grievance Comm'n v. Tolar*, 357 Md. 569, 745 A.2d 1045 (2000). The attorney in *Tolar* violated MRPC 1.3 and 1.4 by failing to communicate adequately to her client, and MRPC 8.1(b) by failing to respond to Bar Counsel's requests in the investigation. Despite her prior sanction history, consisting of two private reprimands, and her violations almost identical to those in *Kovacic*, she received the less severe sanction of a public reprimand because she was remorseful for her misconduct and because we found that repetition of the misconduct was unlikely. *Tolar*, 357 Md. at 585, 745 A.2d at 1053–54. We also found it significant in *Tolar* that the attorney provided considerable *pro bono* service to the community, another mitigating factor that called for a less severe sanction. *Tolar*, 357 Md. at 584, 745 A.2d at 1053.

In the instant case, Respondent's misconduct closely resembles that in *Kovacic* and *Tolar*. Among the rules violated by Respondent are MRPC 1.3, 1.4, and 8.1(b), the same rules violated by the attorneys in those two cases. Unlike the attorney in *Kovacic*, however, Respondent also violated MRPC 1.16, 3.2, and 8.4(d), and previously has received two sanctions for similar misconduct: a public reprimand in *Lee II*[1] for violations of MRPC 1.3 and 1.4, and an indefinite suspension, with the right to reapply no sooner than one year, in *Lee III*[2] for violations of MRPC 1.3, 1.4(a), 8.1(a), and 8.4(c). Thus, a sanction at least as severe as the one imposed in *Kovacic* is appropriate. Absent any significant mitigating factors, such as those substantiated in *Tolar*, indefinite suspension from the practice of law is the proper sanction for Respondent's violations in the present case.

*Lee*, 393 Md. at 564–66, 903 A.2d at 906–07.

It seems to me that the present case calls for a similar triangulation approach. Queen's violations and conduct are

---

1. *Attorney Grievance Comm'n v. Lee*, 390 Md. 517, 890 A.2d 273 (2006).

2. *Attorney Grievance Comm'n v. Lee*, 393 Md. 385, 903 A.2d 360 (2006).

not as egregious as in *Lee* and he does not have a prior record of disciplinary sanctions as did Lee. Thus, an open-ended indefinite suspension seems inappropriate. Queen's situation also has some mitigating factors, à la *Tolar,* though not all of the same character as in *Tolar;* here we have remorse, unlikelihood of repetition of the errant conduct, belated candor towards the client regarding his errors, and paying from his pocket to compensate the client for his errors and omissions. Yet, I am unable to reconcile a reprimand in the present case, in view of the indefinite suspension meted-out to the first-time offender in *Kovacic.* Feeling a little like a forward observer calling in artillery fire on a target, I would suspend Queen indefinitely, with a right to apply for reinstatement no sooner than 90 days following the effective date of the suspension.

Judge Battaglia and Judge Barbera authorize me to state that they join this dissent.